## SULTZNER *vs.* THE STATE.

[ INDICTMENT FOR OBSTRUCTING PUBLIC ROAD. ]

1. *Public road; establishment of, what not indispensable to.*—An act of the commissioners court is not indispensable to the establishment of a public road. It may be dedicated to the public use by the owners of the soil.

2. *Charge to jury; what erroneous, when evidence is only circumstantial.*—A charge to the jury that the evidence, if true, would authorize them to find that a certain road had been dedicated to the public use, and could not be lawfully obstructed by any one, under claim of title to land, is erroneous, when the proof of dedication is only circumstantial.

APPEAL from City Court of Mobile.
Tried before Hon. H. CHAMBERLAIN.

The appellant, Frederick Sultzner, was indicted, tried
and convicted, in the city court of Mobile, for obstructing
a public road in Mobile county.

The opinion fully sets out the facts and errors assigned.

GEORGE N. STEWART, for appellant.—The question to
be decided in this case is whether a certain space,
which had been open and used as a passway, and had
been closed by the owner of the land, was or was
not a public road or highway under the laws of the State.

Sultzner was indicted for closing it, which he claimed he
had the right to do; but the court decided that he was
subject to the indictment. The case is important only to
him in regard to the question whether or not he is bound
to open it again and leave it open.

It was not pretended that this extension, north of what was
called Houston street, was ever located, marked, adopted
or established by any public authority, either of the State
or of the county, nor that it was recognized or recorded as
a public road, or ever worked on by any overseer of roads
or public agent, nor that it appeared on any record.

The court ruled that this lane or passway was a public
road, on evidence that the owners of the land had opened
it, fenced both sides of it, and allowed it to be used by all
persons who chose to do so for many years back; some
witnesses say as far back as 1845. This the court, it ap-
pears, considered as sufficient evidence of dedication.

This evidence would not, it seems, be sufficient proof of
dedication. To say that "the owners of the land had
opened it," would hardly be sufficient, when even the names
of the parties, who were considered in the judgment of the
witness to be owners, were not disclosed. The right of
such parties so loosely called owners, when it is notorious
that very recently all this land was public land of the Uni-
ted States, would be required to be shewn. Even under
the law of dedication, the proof would be insufficient.

The court will observe that the street, called Houston

street, extended southwardly from Government street, and whether that was a public road or not does not appear, nor is it necessary to inquire into its character. The contest is as to an extension north of Government street, which led but a short distance, and led into no other road or street, but led to a pond on a tract of unenclosed land in the woods. It was not, therefore, a thoroughfare, but a mere private lane, from which no one could pass from the open north end without trespassing on land of some individual.

The appellant, however, supposes it to be entirely useless to inquire into the law of dedication, as the case must turn on the statute law of the State, which has very clearly defined what is a public road, and laid down the policy of the State in this respect.

We will notice, of course, that although these ways are called streets, they are outside of the city limits, and the term road is more proper, as the law of roads must govern.

The indictment is for stopping a public road.

What is a public road in this State ? We deny that any one can, of his own will, establish a public road when and where he will, crooked or straight, leading somewhere or to no place, and thus dedicate land to such purpose, and prevent its use for other purposes. The public have an interest in this, and cannot allow lands to be cut up in every direction, in places unsuitable, because it may subserve the interests of one or more particular person. This would be too inconvenient, and would lead to abuse.

The policy of the law has been fixed, from the very period of the formation of the State, that when a public road is proposed to be located, the location must be examined and made by commissioners lawfully appointed—the report made and approved by the court entrusted with that subject.

The law has fixed the proper width of such roads, according to the class or grade deemed proper.

The road, when established, must be opened at public expense and kept up at public expense, and it becomes a public charge for opening, repairs, bridges, &c., and there follow penalties for the breach of those obligations, and

responsibility by the public for damages sustained by any one who may be injured by default of the performance of those public duties.

The public cannot be charged with those responsibilities without its consent, and there can be no public road as to which these responsibilities do not attach.

The public acts by its records, consequently, where there is no record in respect to any road, either establishing it or recognizing it, it cannot be a public road, and no public responsibility can attach to it.

. In looking at the course of legislation on this subject, we find the public policy, as to public roads above referred to, constantly maintained.

The act of 21st December, 1820, Toulmin's Digest, page 391, passed soon after the organization of the State government, declares that "all roads laid out by act of the general assembly, or by virtue of an order of court, a *public road*, and that county courts have full control over them— that they must be laid out by a jury, &c.,—declares who shall work on them—that they shall be laid off in districts, &c.,—imposes a penalty on overseers failing to repair them, &c. This act even goes so far as to impose a fine of $500 against any one who shall establish a public road contrary to law.

In 1836 an act was passed, which we find in Clay's Digest, published in 1843, to consolidate all laws as to public roads into one. In this act we find the same declaration, page 507, Clay's Digest, that all roads heretofore " established or recognized by any act of the general assembly or order of commissioners court," are declared to be *public roads*. This act does not apply to Mobile, but gives the rule of public policy.

In the act of 1852, Code, page 256, the same provisions are found, and these are made to embrace the county of Mobile.

The act of the 12th of January, 1858, establishes a new system, governing public roads for the county of Mobile, and establishes a board of road commissoners for Mobile county, and gives to them the powers which, in other parts

of the State, are vested in the commissioners court by the general law.

The act of the 16th February, 1867, No. 11, Acts, page 539, provides that for the repair of public roads within twelve miles of the city of Mobile, instead of work by citizens, that there shall be a tax of $2 paid for that purpose.

This brings us down to the Code of 1867, the now governing law, which, in page 324, Revised Code, declares that no public road shall be established, changed or discontinued, except on application to the court of county commissioners, and the proper proceedings are defined.—See § 1312.

Section 1359 requires the probate judges to keep road books, records containing a complete list of all the public roads in their counties, their names, grades, and the road precincts, so that an easy reference can be had at all times to them.

Section 1372 provides that any order of court of county commissioners, by which a road is recognized as a public road, is presumptive evidence thereof.

Section 1375 declares how public roads may be established.

All these acts are conclusive, to shew what is meant by public roads, in our laws.

It will not be necessary to inquire into the laws governing private roads, as the indictment in this case is for closing a public road, and we have seen what is meant by a public road.

An instance may be found in the act passed the 16th February, 1860, No. 257, page 352, of the difference made between public and private roads. That act authorizes the Bay Road Corporation to close all roads leading into the road of that chartered company, "except roads established by public authority," shewing that roads established without such sanction, are not recognized by law nor respected as such.

We have argued this matter, probably, at much greater length than was necessary, as the proposition seems to us a very plain one, that no road can be imposed on the public, with the duties and liabilities attending it, and penal-

ties on public officers for not keeping it in repair, without the consent of that public, and that no road can be a public road without this consent, in the face of all the laws of the State regulating this subject. But as the court decided otherwise, and the rule to be laid down is one of interest affecting the whole State, we could not treat it lightly, however plain it may seem to us.

JOSHUA MORSE, Attorney-General, *contra*.

B. F. SAFFOLD, J.—The appellant was indicted for obstructing a public road, in the county of Mobile. The evidence to sustain this indictment was, substantially, that there was a street, road, or passway, called Houston street, outside of the limits of the city of Mobile, crossing, at right angles, Government street, in its extension beyond the city. The portion of this street claimed to have been obstructed, was north of Government street, about fifty feet wide, and bounded on each side by a fence. Its northern extension was some distance to a place in the open woods, where there was a swamp, passable only in dry weather. On this account, the road was but little used, though all persons who chose to do so, passed through at pleasure, without objection from any one, and had done so, according to the testimony of some of the witnesses, since 1845. One witness stated that it had been opened by the owners of the land, after the battle of San Jacinto, and called Houston street. It also appeared that there was a drain or ditch, along one side of this road, from Government street to the pond in the woods. This ditch had been opened several years ago, by the owners of the adjacent land, but a recent application to reopen it had been refused, and the drainage from Government street was thereby impeded. The part of the road south of Government street was much used as a highway. On this evidence the court charged the jury, at the request of the State, that " the evidence, if true, would authorize them to find that the street was a public road dedicated to public use."

Section 1312, of the Revised Code, declares that no public road can be established, changed or discontinued, ex-

cept on application to the court of county commissioners. The purpose of the law is to give access to the various portions of the country, and at the same time, to protect the rights of individuals, against the caprices or unwise acts of others. It could not have been intended to restrain parties who desired it, from dedicating their own property to public use, probably for their own advantage, as well as that of the public. This right of appropriation can not force on the commissioners court, or the public, duties respecting these highways not proper to be performed, because the power to discontinue affords an adequate protection. The correctness of this construction manifestly appears from section 1372, which dispenses, in a great measure, with the formal establishment of a public road by the commissioners court, by making any order of the court recognizing it as such presumptive evidence of its character.

That property may be dedicated to public use, is a well established principle of common law. This right of use may exist in the public, and have no other limitation than the wants of the community at large.—*New Orleans v. The United States,* 10 Peters, 712. In the case of *Jarvis v. Dean,* 3 Bingham, 447, Chief Justice Best told the jury that, if they thought the street had been used for years as a public thoroughfare, with the assent of the owner of the soil, they might presume a dedication ; and the jury found a verdict agreeably to the presumption, although the street had been used as a public road only four or five years.

As the presumption depends more on the assent of the owner than the length of time of the use ; so, time, no matter how long, can not operate as a dedication, when the circumstances of the use do not indicate such an intention. In this State, where the population is sparse, a privilege permitted by the owner of land to the public to pass over it, so long as he is not able, or does not care to enclose or to till it, ought not to be so interpreted as to convert his favor into a deprivation of his right.—*Hole et al. v. Attorney-General,* 22 Ala. 190. The charge asked by the defendant, " that in order to convict, the jury must be satisfied from the evidence, that the road charged to have been obstructed,

had been established or recognized as a public road, by commissioners court, or other proper authority of record," was properly refused. The road might have been a public one, which it was unlawful to obstruct, without having been recognised as such by any lawful authority of record.— *City of Cincinnati v. The Lessee of White,* 6 Peters, 431 ; *Kennedy's Exe'r v. Jones,* 11 Ala. 63 ; *Antones et al. v. Heirs of Eslava,* 9 Porter, 545.

The charge asked for the prosecution ought not to have been given. The evidence would authorize such a verdict as was rendered ; but it would also have permitted the reverse conclusion. There was no evidence that the road had ever been recognized by the commissioners court as a highway. There was none that the owners, who were said to have opened it, were separate and distinct owners of the land through which it passed ; none, that it might not have been intended as a private road for their own convenience. Such considerations as these, slight perhaps, but pertinent, taken in connection with the other testimony, might have procured a verdict favorable to the defendant, if the sufficiency of the testimony in support of his conviction had not been declared by the court.—*Hair et al. v. Little et al.,* 28 Ala. 248.

Judgment reversed and cause remanded.