# STEPHENS *vs.* THE STATE.

[INDICTMENT FOR MURDER.]

1. *Bill of exceptions; when will not be stricken from record.*—A bill of exceptions in a criminal case, taken on the trial in the city court of Montgomery, had on the 20th day of July, 1871, which is signed by the presiding judge on the 18th day of December following, in vacation, under agreement of counsel of the parties, is a valid bill of exceptions under the "act relating to bills of exceptions," approved February 14, 1870, and it will not be stricken from the record in this court.

2. *Indictment and list of jurors; what sufficiently shows services of copy upon defendant, in actual confinement.*—In a criminal prosecution upon a charge of murder, when the accused is in actual confinement, the record which recites that the defendant was *served* with a copy of the indictment and a list of the jurors summoned for his trial, sufficiently shows that a copy of the indictment and a list of the jurors summoned for his trial, including the regular jury, had been delivered to him, according to law. PETERS, J., dissenting on this point, held, that in such a case the word "served" is not equivalent to the word "delivered," or the word "leave."

3. *Oath of jury; when attempted to be set forth, what must show.*—The record should show in a criminal case that the jury were sworn as required by law. If the oath is set forth, it must be that required by the Code. It is not enough to swear the jury to "try the issue between the State and the defendant," but it should also appear that they were sworn "true verdict to render according to the evidence," in the language of the statute.—Rev. Code, § 4092; 43 Ala. 24.

4. *Murder in second degree; what charge as to erroneous.*—On a trial for murder, a charge of the court which instructs the jury that if the blow which occasioned the death was given "in malice," and willfully, the accused may be found guilty of murder in the second degree, under our statute is erroneous. There must be "malice aforethought" to constitute murder in the first or second degree under our statute.

5. *Court, remarks of in presence of jury; what erroneous.*—When asked by the accused to give a charge upon the form of the verdict, if there is any doubt as to the guilt or grade of guilt, the court should not say, in the hearing of the jury, "I can't conceive how the jury could find such a verdict upon such a state of facts; but if you request it, I'll instruct them." Such remarks may be fatal to fairness.

6. *State; when costs not taxed against.*—This court will not adjudge costs against the State upon the denial of a motion made by the Attorney-General in a criminal case.

Stephens v. The State.

APPEAL from the City Court of Montgomery. Tried before Hon. JOHN D. CUNNINGHAM.

The appellant, Zack Stephens, was indicted for murder at the February term, 1871, of the city court of Montgomery, tried at the July term following, and found guilty of murder in the second degree.

An appeal having been taken by the defendant to the January term, 1872, of the supreme court, the clerk of the city court of Montgomery, on the 8th day of August, 1871, sent up to the supreme court a full transcript of the record and proceedings in said cause, duly certified under his hand and the seal of the court.

After the record was sent up to the supreme court, and after another term of the said city court had been held, to-wit, on the 18th day of December, 1871, a bill of exceptions was signed by the presiding judge under a written agreement signed by the prosecuting attorney, which agreement is set out in full in the opinion of the court. This bill of exceptions was then certified to the supreme court by the clerk of the said city court under his hand and the seal of the court, and was filed in the office of the clerk of the supreme court on the 28th day of December, 1871, and was by him attached to the record which had been previously sent up.

The testimony, in material respects, was conflicting, so as to leave the grade of the defendant's guilt in doubt.

The following charge was given by the court in writing, and of its own motion, after the conclusion of the general charge :

"If the jury believe, from the evidence, beyond a reasonable doubt, that the defendant, in the county of Montgomery, and before the finding of this indictment, in malice, did willfully strike the deceased, as described, by striking him with a club or stick likely to produce death, or great bodily harm, and that he did so without the specific intent to kill him, but with the intent to inflict upon him great bodily harm, and deceased came to his death by

45

wounds inflicted under such circumstances, the defendant is guilty of murder in the second degree."

To the giving of this charge the defendant excepted. The bill of exceptions then states :

" At the conclusion of the general charge to the jury, the court instructed them what should be the form of their verdict if they should find the defendant guilty of murder n the first degree, or murder in the second degree, or of manslaughter in the first degree, and then closed; thereupon the defendant, by his counsel, requested the court to instruct the jury what should be the form of their verdict if they should find the defendant guilty of manslaughter in the second degree. To this request the court replied, in the presence and hearing of the jury, ' I can't conceive how the jury could find such a verdict upon such a state of facts, but if you request it, I'll so instruct them,' and did then instruct the jury as requested. To this remark defendant excepted."

The remaining facts appear in the opinion.

ATTORNEY-GENERAL for motion to strike out bill of exceptions.—The motion ought to be granted, because after the appeal was taken and the record placed on the files of this court, the court below had no power over the case. *Montevallo Mining and Manufacturing Co. v. Reynolds*, 44 Ala. 252–4. And no agreement of counsel could confer power on the court, under these circumstances, to add to the record by signing a bill of exceptions.

Again, the agreement of counsel was made after an entire term had intervened between the term at which this case was tried and the time of the agreement of counsel. The vacation in which the agreement was made and the bill of exceptions was signed was not that immediately succeeding the term of the trial. It was the vacation of a subsequent term. This was not the intention of the statute of 1870, " relating to bills of exceptions."

Again, the clerk, under a penalty, is compelled to send up a " full and accurate transcript" of the record of criminal cases appealed to the supreme court within twenty

days, &c.—Acts 1870-71, p. 41. Bills of exceptions properly signed become parts of record. Therefore, to enable him properly to perform his duty, the bill of exceptions should be signed within twenty days. As this provision conflicts with the act of 1870 relating to bills of exceptions in criminal cases, the act is repealed *pro tanto*.

If no appeal had been taken, or if the record had not been filed in this court until after the agreement of the counsel, and signature of the bill of exceptions, the position of the appellant's counsel might be entitled to some consideration. But since the appeal had been taken, the court had finally adjourned ; the record was made out and sent to this court; another regular term of the city court had been held before the counsel made any agreement at all concerning the bill of exceptions, or such bill was signed.

The validity of agreement of counsel made under the law is not assailed. It is submitted, that such agreements should be made during the term at which cases are tried, and not several months after its adjournment.

JOSEPH S. WINTER and WM. S. THORINGTON, Esq's, made the following points for the appellant on the motion to strike the bill of exceptions from the record :

1. The agreement made by the solicitor in relation to the signing of the bill of exceptions is binding on the State. *Rosenbaum v. The State*, 33 Ala. 362.

2. This agreement was made under and by virtue of the act of the legislature entitled " An act in relation to bills of exceptions," approved February 14, 1870 This act is remedial in its nature, and should receive a liberal construction.

3. The act above referred to fixes no limit within which bills of exception may be signed by agreement of counsel. The only limitation on the right given to parties by this statute is that which requires appeals to be taken within two years from the rendition of the judgment or decree. Under this statute it is sufficient if the bill of exceptions

is signed, by agreement of counsel, at any time before the right of appeal is barred.

4. The court below, under circumstances like these, has power, even after appeal and *supersedeas,* to amend its rec_ ords so as to make them speak the truth, whenever there is anything of record to amend by. During the term the record is said to be in the breast of the judge. The act only lengthens the term in which this part of the record is permitted "to remain in the breast of the judge." The act gives him power to reduce this portion of the proceed-ings to record by signing them at any time during the pe-riod allowed by the act. This court has no power to re-fuse to act upon any matter which the law thus makes part of the record, although such proceedings are not made matter of record until after the cause comes into this court. It is a sufficient answer to the objection of the Attorney-General, to say that the law itself permits the conse-quences which he urges as a reason in favor of his motion.

NOTE.—The motion to strike the bill of exceptions from the files was denied, and the reasons therefor given in the following opinion:

PETERS, J.—In this case, there is a preliminary mo-tion to strike the bill of exceptions from the record, made by the Attorney-General on behalf of the State. The ground of this motion is, that the bill of exceptions - brought up with the transcript was not signed by the pre-siding judge on the trial in the court below, as required by law; and that what purports to be a bill of exceptions was not filed in this court until after the transcript had been filed, and that it has not been brought to this court by *cer-tiorari,* and is not, therefore, a part of the record in the cause.

It appears from the record, that the appellant, Zack Stephens, was indicted upon a charge of murder, and tried upon this charge in the city court of Montgomery on the 20th day of July, 1871. He was found guilty of murder in the second degree, and sentenced to confinement in the

penitentiary for the term of fifty years. The bill of exceptions found in the transcript does not seem to have been dated at all, though it is properly signed by the learned judge who presided on the trial in the court below. It is entitled as of the July term of the city court of Montgomery, in the year 1871, and it recites that the trial of the appellant, said Zack Stephens, took place on the 20th day of July in said year 1871. On this bill of exceptions is a consent or agreement, in writing, in the following words, to-wit:

"Montgomery, Ala., Dec. 18th, 1871.

"I consent and agree that the foregoing is a correct bill of exceptions, and that the same may be signed by the presiding judge in vacation, at *any time before* the next term of the Supreme Court of Alabama.

"JNO. GINDRAT WINTER,

"Prosecuting Attorney."

Before the passage of the "act relating to bills of exceptions," which was approved February 14, 1870, bills of exceptions were of no validity unless they were signed by the judge during the term of the court at which the trial took place, or by consent of counsel in writing, within ten days after the adjournment of the court.—Revised Code, § 2760; *Bryant v. The State*, 36 Ala. 270; *Union India Rubber Co. v. Mitchell*, 37 Ala. 314. But the act above referred to declares, "That bills of exceptions in the several counties (courts?) of this State, in which such bills are or were by law authorized to be signed, shall be of the same force and have the same effect, if signed in pursuance of an agreement of counsel of the parties, notwithstanding they may have been signed in vacation, as if they had been signed in term time at the term when the judgment was rendered. This bill shall apply to judgments heretofore rendered and to bills of exception heretofore signed." Pamph. Acts 1869–70, p. 99, No. 112. This is the whole act, save the title and the enacting clause. It is a remedial law, and should, for this reason, be so construed as to advance the remedy. Such laws, almost without exception, are to be liberally construed, and everything is to be

done·to advance and enlarge the remedy that can be done consistently with any construction that can be put upon them.—*People v. Runkle,* 9 John. 147; *Gillett v. Moody,* 3 New York, 479; *Johns v. Johns,* 3 Dow, 15; Dwarris on Statutes, Potter's ed. pp. 73, 74. The act above quoted puts no limit upon the period within which a bill of exceptions may be signed under its provisions, save "if signed in pursuance of an agreement of counsel of the parties." This is the only limit. Then, if the court should add another, this would approach legislation, which is forbidden to the courts. The legislature, then, giving its act the most extended scope, did not propose to limit this enlargement of the remedy to any time short of the limitation of the right of appeal. It will be seen that the agreement aforementioned is not required to be in writing, though it is possible that no other than an agreement in writing could be heard in this court, because its jurisdiction in such a case is wholly appellant, and it could only revise the action of the court below upon the record from that court. The bill of exceptions sought to be stricken from the record in this cause very clearly comes within the purview and purpose of the above recited act, and it is a most essential part of the remedy. And there is no doubt in my mind that it is the right of the appellant to have its benefit, whatever that may be, and the duty of this court to see that this right shall not be denied. But it is contended, also, that the bill of exceptions attached to the transcript was not filed in this court until the 28th day of December, 1871, some days after the transcript itself had been filed, on the 11th day of the same month. The two together make up the record in the case, and both are verified by the certificate of the clerk and the seal of the court from which it has been sent, and in which the appeal has been taken, and both are filed here as parts of the same record before the term of this court to which the appeal has been taken. This, though a very irregular mode of getting a record into this court, is not such as would justify this court in denying to the clerk's certificate and the seal of the court below their proper validity. And the record be-

ing now perfect, no *certiorari* could be awarded. The genuineness of the bill of exceptions is not impeached, but only that it has come here in an irregular way. It is here under the certificate of the clerk, verified by the seal of the court from whence it comes, and it is filed in proper time in this court.—Rev. Code, §§ 3495, 3498. This, I think, is enough, when the objection is confined solely to the regularity of the filing of the record in this court.

Let the motion be refused, but without costs, as the State in such a suit does not pay costs by judgment of this court.

Wm. S. Thorington, Esq., for the appellant, made the following points in the main case :

1. The record fails to show that a copy of the indictment and a list of the jurors summoned for the trial, including the regular panel, "was delivered" to the "defendant" at least one entire day before the day appointed for his trial, notwithstanding it appears he was in actual confinement on a capital charge.

The recital in the record that a "copy of the bill of indictment, &c., having been served on the defendant," &c., does not meet the requirement of the statute and the constitution upon this subject. The words "served upon the defendant" simply express a conclusion or opinion of the sheriff, and so far as appears to this court may mean that these papers were served by being handed to defendant's counsel, or left at the jail, or read to the defendant. But the words "delivered to the defendant" clearly express a fact. They can only mean an actual, manual delivery of these papers to the defendant in person, and this is what the law requires should be shown affirmatively by the record.—Const. Ala. Art. I, § 8 ; Rev. Code, § 4171 ; *Driskill v. The State,* 45 Ala. 21 ; *Flanagan v. The State,* 46 Ala. 703.

2. The record shows that an oath materially different from that required by the statute was administered to the jury.

Section 4092 of the Revised Code requires that the jury,

among other things, should be sworn a "true verdict to render according to the evidence," while the record in this case shows that the jury were sworn "well and truly to try the issue joined between the State of Alabama and the defendant, Zack Stephens."

In arriving at a verdict under the oath required by the statute, the jury are judges only of the facts, and not of the law, of the case.—Rev. Code, § 4092; 18 Ala. 119, 720; 26 Ala. 90; 12 Ala. 153; *United States v. Battiste,* 2 Sumner, 243.

Under the oath which the record shows was administered, the jury were made judges of both the law and the facts of the case. They were entirely unrestrained and uninstructed thereby as to the bounds of their province, and for aught that this court may know the verdict of some of the members of the jury may have been the result of their ideas of the law of the case, while the verdict of others may have been predicated upon the principles of equity which they considered applicable to the case; and, so far as bound by their oath, none of them were required to render a verdict "according to the evidence."—See on this point brief of appellant's counsel in the case of *Joe Johnson v. The State,* now pending for decision.

In support of the foregoing propositions the case of *Frank v. The State,* (40 Ala. 12,) is cited to the point that the prisoner has the right to have any error which distinctly appears upon the record revised by this court.

Also, the case of *Shapoonwash v. United States,* (Wash. Ter. Rep. 219,) to the effect that "in a capital case no presumption is made in favor of the regularity of the proceedings; the record must show that the prisoner was duly and legally convicted."—Brightly's Dig. Fed. Decis. p. 74.

3. The charge given by the court is erroneous, for the following reasons :

Murder in the second degree, as defined by the Revised Code, § 3653, is "any homicide committed under such circumstances as would have constituted murder at common law." As defined by Coke, murder at common law is "when a person of sound memory and discretion unlaw-

fully killeth any reasonable creature in being and under the king's peace with malice aforethought."—Black. Com. 4th book, p. 194.

All writers on criminal law agree that "malice aforethought" is a necessary element of the crime of murder. The omission of these words, therefore, from the charge of the court was erroneous. The words "in malice," used in the charge, do not supply this omission. The killing might have been in malice, yet without malice aforethought.

4. The remark of the court, set out in the bill of exceptions, not only excluded from the minds of the jury the consideration of a verdict of manslaughter in the second degree, but also of "not guilty." It substituted the opinion of the presiding judge for that of the jury, its natural effect upon them being to prejudice their minds against the defendant, and to cause them to disregard the testimony of his witnesses. It deprived the accused of the fair, impartial trial by jury which was guaranteed to him by the laws and constitution of the State.—*Sims v. The State*, 43 Ala. 33.

ATTORNEY-GENERAL, *contra.*

The opinion of the court in the main case was as follows:

PETERS, J.—The appellant, Zach Stephens, was indicted at the February term, in 1871, of the city court of Montgomery, for murder. He was tried at the July term following of said city court, and found guilty of murder in the second degree, and sentenced to confinement in the penitentiary for fifty years. And he now brings the case here by appeal, and insists that the record shows numerous errors in the proceedings in the court below, which would justify a reversal of the judgment of conviction, and a new trial in the court below.

In such an appeal, this court must render such judgment on the record as the law demands. No assignment of errors is needed.—Rev. Code, § 4314. The charge here is a capital offense.—Rev. Code, §§ 3653, 3654. On this the

accused was arrested and committed to jail, and he was in actual confinement at the time of the trial. This entitled him to have a copy of the indictment and a list of the jurors summoned for his trial, including the regular jury, "*delivered* to him at least one entire day before the day appointed for his trial."—Rev. Code, § 4171. This is a constitutional right, which the record should show has not been denied him.—Const. Ala. Art. I, § 8; *Driskill v. The State*, 45 Ala. 21; *Lacy v. The State*, 45 Ala. 80; *Flanagan v. The State*, 46 Ala. 703. The recital in the record on this point is in these words: "It is ordered by the court, that the trial of this cause be set for Thursday, the 9th day of March, 1871; and that the sheriff summon fifty special jurors, in addition to the regular panel, to appear on said day, to serve as jurors in said cause; and ordered, that a copy of the indictment, together with a list of the special jurors, and also of the regular panel, be *served* upon him one entire day before the day set for trial." The judgment entry also recites that "a copy of the indictment and a list of all the jurors, both regular panel and special jurors, having been *served* upon defendant one entire day before the day set for trial," &c. It is insisted that there is such a radical difference between the word *delivered* and the word *served*, that they can not be used indifferently for each other. The constitution declares that "the accused has a right" "to demand the nature and cause of the accusation," and "to *have* a copy thereof."—Const. Art. I, § 8, *supra*. In criminal prosecutions, certainty to every intent is required. Where the life or liberty of the citizen is in peril, nothing is to be taken by intendment. The words, then, which declare the performance of an act to which the accused is entitled as a right, should be those used in the law that gives the right, or of equivalent import. The words "to have," and "to deliver," are not equivocal. They are certain to every intent. They need no argument to make their meaning clear. Can this be said of the word "serve"? I think not. A service may be made without an actual delivery. The usual mode of summoning witnesses is by serving the

Stephens v. The State.

subpœna by notice of its contents. This would not do, if an actual delivery of a copy were required. Then, the language of the record is insufficient to show that a copy of the indictment and a list of the jury were *delivered to* the defendant, as required by law. And without this, the proceeding is erroneous.—45 Ala. 21, 80, *supra*. It is much the best to follow the language of the statute in such a case. Then there can be no doubt. The same may be said of the declarations of the record upon the organization of the juries. The safest rule is to follow the language of the statute as minutely as possible. If departures from this language are permitted, the field of controversy will be enlarged, and the rights of the accused will be imperiled. In criminal proceedings this is forbidden. *Parmer v. The State*, 41 Ala. 416.

On this point I differ with my brethren. They hold that the recitals in the record show a *delivery* to the defendant of a copy of the indictment and list of jurors, &c., as required by law.

It is further objected in behalf of the appellant, that the oath administered to the jury, on the trial below, was not sufficient. The record shows that the jury were sworn to "try the issue joined between the State of Alabama and the defendant, Zach Stephens." This is not the oath required by the statute. This latter oath is not only to "try the issue joined between the State of Alabama and the defendant," but also, "*true verdict render according to the evidence.*"—Rev. Code, § 4092. The difference between these two forms is too palpable to need comment. The statutory form is the only one that can be permitted to be used. If any other is used, the court does not proceed by "due process of law."—Const. Ala. Art. I, § 8; Rev. Code, § 4092; *Perry v. The State*, 43 Ala. 24; *Joe Johnson v. The State*, 47 Ala. 9.

The charge of the court, as shown in the bill of exceptions, is also objected to. It is not free from error. The statute divides felonious homicides into two classes; that is, 1st, murder in the first degree; and 2d, murder in the second degree. This last is any "homicide committed

under such circumstances as would have constituted murder at common law."—Rev. Code, § 3653. There could be no murder at common law without premeditated malice; that is, "malice aforethought."—4 Bla. Com. 195; 1 Hawk. P. C. p. 184, 7th Lond. ed. 1795; 1 Russ. on Crimes, p. 482, *et seq.*. The charge here instructs the jury that "malice" alone, coupled with a willful act which produced the death, was sufficient to constitute murder at common law, or, which is the same thing, murder in the second degree under our statute. Malice means evil-mindedness and a disregard of law. All homicides, except in self-defense, or by accident or ignorance, are done with an evil mind and a disregard of law; yet there is a considerable class of homicides, so committed, which are not murders at common law, or under the statute.—Rev. Code, § 3659; 1 Bish. Cr, Law, p. 230, bottom; § 263, and cases in notes. Then, there must not only be malice, but "malice aforethought," to constitute murder in the first or the second degree under our statute. The charge of the court found in the record departs from this definition of murder in the second degree. It is erroneous.

The remarks of the court, when asked by the defendant's counsel in the court below to instruct the jury as to the form of their verdict in case they found the defendant guilty of manslaughter in the second degree, or involuntary manslaughter, were unfortunate. The remarks were, "I can't conceive how the jury could find such a verdict upon such a state of facts; but, if you request it, I'll instruct them." Although this was obviously not intended as a charge to the jury, yet it is hardly consonant with that perfect fairness and impartiality that should be most scrupulously maintained by the presiding judge where the life and liberty of the citizen are imperiled. Often "trifles light as air, are confirmations strong as holy writ" to bias minds, and juries are not always free from such. But I have no doubt that those remarks were an unguarded and hasty expression of opinion, which will not be repeated by the learned and amiable and upright judge who presided

on the trial of this cause in the court below.—*Sims v. The State*, 43 Ala.

The judgment and sentence of the court below are reversed, and the cause is remanded for a new trial. The appellant, said Zach Stephens, will be kept in custody until discharged by due course of law.