## MALLORY v. MONTGOMERY COUNTY.

**1. Contract: RATIFICATION: BOARD OF SUPERVISORS.** Where the board of supervisors had, in their individual capacity, consented to a change in a contract for the construction of a bridge, and after the bridge was completed appointed a committee to examine the same, with power to accept or reject it, *held*, that the appointment of the committee with the powers indicated, and a subsequent qualified acceptance by the board, did not amount to a ratification of the change in the contract.

**2. ———: ———: ———.** The acceptance of the bridge by the board being a condition of payment therefor, when they accepted it upon the condition that the contractor would take a specified sum for his work, the limitation of his recovery to that amount could not be made to depend upon his receiving it in full satisfaction.

**3. ———: WIDTH OF BRIDGE.** The fact that the board contracted with plaintiff for the construction of a bridge of less than the width provided by statute would not affect plaintiff's right of action on the contract.

*Appeal from Mills Circuit Court.*

THURSDAY, MARCH 18, 1875.

THE plaintiff's petition alleges in the first count that in the month of February, 1868, the defendant entered into a written contract with one N. E. Snodgrass for the construction of a bridge across the Middle Nodaway river, near Villisca, for the sum of fourteen hundred and twenty-five dollars; that on the 8th day of April, 1869, said Snodgrass sold and transferred by writing his interest in said contract to the plaintiff; that about said last named date the defendant consented to a change in the construction of said bridge, and to the assignment of the contract for erecting same to the plaintiff; that said written contract is lost; that the bridge was to be built of pine timber and lumber; was to be a pile bridge, ninety-six feet long, and of three spans, sixty feet, twenty feet and sixteen feet respectively, and the contract

price for building the same was one thousand four hundred and twenty-five dollars, to be paid when the bridge was completed and accepted. This count of the petition further alleges the due construction of the bridge, the acceptance of the same by defendant, the payment thereon of divers sums amounting in the aggregate to one thousand dollars, and that there is due thereon four hundred and twenty-five dollars and interest, which defendant refuses to pay.

The second count alleges that, at the special instance and request of defendant, through its board of supervisors, plaintiff constructed a pile bridge across the Middle Nodaway river, near the town of Villisca, which is of the reasonable value of one thousand four hundred and twenty-five dollars; that defendant accepted the same, has paid one thousand dollars, and refuses to pay the balance due therefor.

Plaintiff asks judgment for four hundred and seventy-six dollars, based upon the contract mentioned in the first count, or the cause of action stated in the second count.

The defendant's answer is:

"1. A general denial.

"2. That the bridge in question was constructed fourteen feet wide, instead of sixteen feet in width, as by the statute provided.

"3. That defendant agreed to accept said bridge upon condition that plaintiff would receive in full, for the construction thereof, one thousand dollars; that defendant paid said sum, and plaintiff received it in full satisfaction of the cause of action stated.

"4. That after the completion of the bridge plaintiff presented his bill for the residue claimed to be due, to-wit: for the sum of six hundred dollars; that the board of supervisors of defendant passed upon said bill, and allowed and ordered to be paid thereon one hundred and seventy dollars and eighty-four cents in full of said claim, which plaintiff, with full knowledge, accepted.

"5. That plaintiff failed to build the bridge in accordance with the terms of the contract set up in the first count of the petition, and that in consideration of such failure the defendant offered to accept the bridge, and pay therefor one thousand dollars, which plaintiff received in full satisfaction of his claim.

"6. That the bridge was not built according to contract, nor in a good and workmanlike manner, to the damage of defendant in the sum of fifteen hundred dollars, for which, after deducting plaintiff's demand, defendant asks judgment."

Plaintiff replied, denying all the allegations of the answer. The written consent to the change in the contract is as follows:

."We, the undersigned, supervisors of the county of Montgomery, State of Iowa, do hereby consent to changing the plans and specifications of highway bridge across Middle Nodaway, on the south side of the town of Villisca, as let to Snodgrass, to a pile bridge, with one span of sixty feet, one twenty, and one sixteen feet. We also consent to the assignment by said Snodgrass to S. H. Mallory of all his interest in contract for constructing a bridge at the aforesaid place, and agree to pay said Mallory Snodgrass' contract price.

> "JOSEPH CARLISLE,
> "P. P. JOHNSON,
> "S. C. DUNN,
> "JACOB McCULLY,
> "W. W. MERRITT."

The bridge which plaintiff constructed is what is called a Queen truss bridge. It consists of one span of sixty feet, and on the north a span of sixteen feet, called an approach or bank span, and on the south two like spans, each about twenty feet long. The only place there is any truss is in the sixty-foot span. The other spans are simply stringers with the floor laid on them.

The records of the board of supervisors, of date September 9, 1869, contain the following entry:

"On motion Joseph Carlisle, Jacob McCully and S. C. Dunn were appointed commissioners to examine the bridge across the Middle Nodaway river, near Villisca, and receive or reject said bridge, as they shall deem just and right after such examination, and report their doings at the meeting of this board in October."

Pursuant to this order the said committee, on the 20th day of October, 1869, filed their report as follows:

"*To the Board of Supervisors of Montgomery County, Iowa*:

"We, the committee duly appointed to examine a bridge south of Villisca, on Middle creek, built by S. H. Mallory, do return our report of our examination of said bridge as follows: Said bridge we are willing to receive by paying S. H. Mallory one thousand dollars therefor, that being the amount of money we consider it worth, and no more.

"JOSEPH CARLISLE,   }<br>
"JACOB McCULLY,   }  Committee."

On the 4th day of January, 1870, being the second day of the January session of the board, the following proceeding was had:

"On motion P. P. Johnson and J. T. Patterson were appointed a committee on part of this board to settle with Mallory for building a bridge across the Middle Nodaway river, near Villisca, whenever the said Mallory shall demand such settlement."

On the 18th day of October, 1870, this committee submittted to the board the following report:

"Committee on Mallory bridge report in favor of allowing Mallory one hundred dollars more, making in all nine hundred and twenty-nine dollars and sixteen cents.

"P. P. JOHNSON,<br>
"J. T. PATTERSON."

On the 18th day of October, 1870, the board adopted the following order:

"Ordered by the board that S. H. Mallory be allowed the sum of one hundred and seventy dollars and eighty-four cents, out of bridge funds, balance due him."

The cause was tried by a jury, and a verdict was returned for plaintiff for three hundred and sixty dollars and fifty-eight cents. Motion for new trial overruled, and judgment upon the verdict. Defendant appeals.

*C. E. Richards*, for appellant.

*Wayne & McPherson* and *A. Beeson*, for appellee.

Day, J.—I. It is conceded that the bridge is not constructed in accordance with the original written contract with Snodgrass. It is also conceded that the written assent of the various members of the board of supervisors to a change in the plan of construction does not bind the county. Respecting this the court properly instructed the jury as follows:

"The first question for you to determine is whether the defendant consented to the change in the construction of said

1. CONTRACT: ratification: board of supervisors.

bridge as specified in the writing signed by said Joseph Carlisle and others. That writing purports to be the act of the parties signing it individually, although supervisors, and on its face and of itself does not bind the county."

It is necessary, therefore, that there should be, by the members of the board of supervisors, as such board, some recognition of the right to make such change in the plan. For, as the board might, before the bridge was erected, have agreed to a change in the character of a structure, so they might during the process of erection, or after it was completed, assent to the changes made.

Hence it became a very material question in this case to determine, inasmuch as the paper signed by the members of the board did not bind the county, whether the board of

supervisors had done any other act adopting the change by which the county is bound. On this branch of the case the court instructed the jury as follows:

"2. If, however, you find from a preponderance of the evidence that the defendant, by its board of supervisors, afterward, at a regular meeting, ratified and adopted the acts of the said Carlisle and others, as specified in said writing, then it will be bound thereby, *and you are instructed that if you find from the evidence that the plaintiff, in the spring and summer of 1869, constructed said bridge after the plan as changed in the said writing; that said Carlisle and others signing said writing constituted a majority of said board of supervisors on the 7th of September, 1869, and that on the said 7th of September, 1869, after said bridge was built, the said board of supervisors, at a meeting then held, appointed a committee consisting of Joseph Carlisle, Jacob McCully and S. C. Dunn, then members of said board, to examine said bridge, with authority to receive or reject the same after such examination, and with instructions to report at the subsequent October session of said board thereon, you may from these facts infer a subsequent ratification of said change in the construction of said bridge, as indicated in said writing signed by said Joseph Carlisle and others, and set out in the first count of the petition.*"

The italics are ours. Down to the italics the instruction is clearly right. The remainder of it, we think, is erroneous. It is clear that an acceptance of the bridge after its completion by the board of supervisors would constitute a ratification of the change in the plan of construction. A committee, however, appointed by the board *to examine the bridge, with authority to receive or reject the same after such examination,* might either *receive* or *reject* the bridge. And it would be only their determination to *receive* the bridge that would amount, on the part of the board, to a ratification of the change. It certainly cannot be claimed that if said committee should, after examination, determine to reject the bridge, that never-

theless the board, by appointing the committee to examine the bridge, had adopted the change.

The instruction, therefore, is equivalent to a direction that from the appointment of a committee to examine the bridge and accept or reject the same, and to report their action to a subsequent meeting of the board, the jury might infer a report in favor of the acceptance of the bridge.

The evidence shows that the report actually made by the committee was adverse to the acceptance of the bridge at the contract price, and hence equivalent to a report rejecting the same, unless it could be had for less than the contract price. The contract price was one thousand four hundred and twenty-five dollars. The committee reported that they considered the bridge worth one thousand dollars, and no more, and that they were willing to receive it by paying Mallory that sum. This is equivalent to saying that they were not willing to receive it and pay one thousand four hundred and twenty-five dollars therefor. In other words, they say we will not take this bridge under the contract and at the contract price, because it is not built as agreed, but we are willing to make a new contract therefor, and to take it at one thousand dollars. Yet, notwithstanding this evidence, the jury are told that from the appointment of this committee to examine, and to receive or reject the bridge, they might infer a ratification of the change in the construction, as indicated in the writing signed by Joseph Carlisle and others. This writing signed by Carlisle and others fixes the price of the changed structure the same as that agreed to be paid Snodgrass, to-wit, one thousand four hundred and twenty-five dollars. A ratification by the board of the change agreed upon in this writing would amount to an agreement to pay therefor the original contract price; hence, if a ratification of the change is to be inferred from the appointment of the committee referred to, the county must pay for the bridge one thousand four hundred and twenty-five dollars, notwithstanding the

condition . upon which the committee reported in favor of accepting the same.

Appellee concedes that the use of the bridge by the inhabit-ants of the county would not, of itself, be an acceptance, and that the acts alone of the individual members of the board of supervisors would not bind the county. But he claims that a majority of the board of supervisors, when in regular session, and in all respects acting with authority, did receive the bridge after it was built.

It is claimed that there can be no such thing as a *conditional* acceptance; that there either was an acceptance or there was not. In other words, that there either was an *unconditional* acceptance, or there was *no* acceptance. And from this position appellee concludes that when the board undertook to make a conditional acceptance they in fact made an unconditional one, whereas we the rather conclude that, if there is no middle ground, by making a conditional acceptance they did not make an unconditional one, and hence they made no acceptance.

A little scrutiny of the position of appellee will, we think, show *its* unsoundness. And, for illustration, we will not go beyond the facts of this case. A board of supervisors contracts for the erection of a bridge on a public highway, according to a plan agreed upon, at a stipulated price of one thousand four hundred and twenty-five dollars. The contractor erects the structure after a plan entirely different. The mere use of the bridge by the public does not create any implied agreement on the part of the county to pay therefor. In order that there may arise an implied contract to pay for work, the benefit of which is received, the party to be bound must be in a situation where he is entirely free to elect whether he will or not accept of the work. *Zottman v. San Francisco*, 20 Cal., 106. The bridge in question being on a public highway, the county has no election but to permit the same to be used so long as it remains there.

Mallory v. Montgomery County.

Hence some voluntary act of acceptance upon the part of the board of supervisors is necessary, in order that the county may be bound to pay for the work done. The board, through a committee appointed for that purpose, examines the bridge, and says to the contractor, "The bridge as constructed is worth but one thousand dollars; we are willing to receive it and pay you that sum." This act, appellee contends, is an unconditional acceptance, and that, although before it was done the county was not liable to pay for the bridge at all, yet after it was done the county became liable, even in excess of one thousand dollars, if it should be proved upon the trial that the bridge was worth more than that sum. This view, it seems to us, cannot be sustained. If the acceptance of the board is necessary to bind the county, and the board have the option to accept or reject, it must follow that they may make their acceptance subject to such conditions as they may see fit to impose.

II. The court further instructed the jury as follows:

"4. If, therefore, you find that of the committee, consisting of said Joseph Carlisle, Jacob McCully, and S. C. Dunn, referred to in my last instruction as appointed by said board of supervisors, on the 7th of September, 1869, to examine, and receive or reject, said bridge, a majority, to-wit, Joseph Carlisle and Jacob McCully, on the 20th of October, 1869, filed their report in favor of receiving said bridge of said Mallory, at the price of one thousand dollars, you will next inquire whether the said board subsequently adopted the recommendation of said committee, and, if yea, whether the plaintiff received said sum of one thousand dollars in full satisfaction of his claim against said county for constructing said bridge.    *    *    *"

The instruction then sets forth a number of facts, which the jury are told would not constitute an acceptance of the one thousand dollars in full, nor estop plaintiff from recovering more.

This instruction is erroneous, it seems to us, in that it makes the question whether plaintiff shall recover more than one thousand dollars to depend upon whether he received the thousand dollars in full satisfaction of his claim.

He was not, as we have seen, in a condition to recover anything, unless the county, by its board of supervisors, accepted the bridge. He could not compel them to accept. If, then, he could neither compel the board to accept the bridge, nor recover for constructing the same without their acceptance, it must follow that when they made their acceptance conditional upon his taking one thousand dollars therefor, the limitation of his recovery to that amount cannot be made to depend upon his receiving it in full satisfaction.

III. The Revision, § 822, provides that bridges must not be less than sixteen feet in width. Respecting this the court instructed as follows:

3. ——: width of bridge.

"6. If, under my previous instructions, you find that the plaintiff, in other respects, is entitled to recover from the defendant in this suit, and you also find, among the facts developed .by the evidence, that according to the plan and specifications referred to in the first count of the petition said bridge was to be fourteen feet wide, and that the same was so constructed as to width, you are instructed that that circumstance will not affect the plaintiff's right of action."

In giving this instruction the court did not err.

The action of the board in contracting for a bridge less than the statutory width was erroneous simply, and not void. *Knowles v. The City of Muscatine*, 20 Iowa, 248, and cases cited.

The views which we have already expressed determine the principal questions involved in the appeal, and render a consideration of the remaining errors assigned unnecessary.

For the reasons before given the judgment must be

REVERSED.

Mallory v. Montgomery County.

DAY, J.—In a petition for rehearing our attention is called to the fact that the petition contains a count upon the *quantum meruit*, and it is insisted that under the instructions the jury must have found for the plaintiff under this count, and that the second instruction above considered could not have affected the case. Appellee, in support of this view, calls our attention to the following instruction of the court:

"5. Plaintiff's counsel having admitted in the argument that the plaintiff has not constructed the bridge in controversy in a good, workmanlike manner, as required in the contract set up in the first count of his petition, you should, under his allegations in his second count in said petition, allow him a reasonable compensation therefor, as the same may appear from the testimony, not exceeding the contract price, to-wit: one thousand four hundred and twenty-five dollars, less the payment of one thousand dollars acknowledged in the petition, and what, if any, sum you may find from the evidence it would be necessary to make the same such a bridge in quality and value as you may find to be required by said contract; but, if you find that the whole reasonable value of said bridge does not exceed one thousand dollars, the sum admitted to have been paid, you should find for the defendant." It is claimed that this instruction was not excepted to, and that it must be regarded as correct. We do not propose to consider the question of its correctness. It is evident that this instruction does not lose sight of the contract, nor contemplate a recovery independently of it. It directs the jury to allow a reasonable compensation, less what, if any, sum they might find it would be necessary to make the bridge such an one in quality and value as required by the contract; hence it became very material to determine under what contract plaintiff was operating—whether under the original or the substituted one—and the question of ratification becomes an element in the right to recover, even under this instruction. Indeed, this

view is necessary to the harmony and consistency of the charge. In the first instruction the court charges that the first question for the jury to consider is whether defendant consented to the change in the construction of the bridge; and in the next instruction they are directed that they may infer such consent from certain enumerated acts. It cannot, therefore, be supposed that in the fifth instruction the court intended to charge that a recovery might be had independently of such consent. The whole case, as we understand it, was put to the jury upon the theory that some kind of a ratification of the changes in the plans made by Joseph Carlisle and others was necessary upon the part of the board, in order that plaintiff might recover, and this we understand the original argument of appellee to concede. The court erred, as we hold, in the instructions respecting the circumstances from which a ratification might be inferred.

The right to recover upon the *quantum meruit* alone, independently of a ratification of the change in the contract, was not passed upon in the court below, and we do not deem it proper to determine it now, in the present state of the record. Whatever is said in the foregoing opinion respecting the necessity of an acceptance of the bridge, to the right of plaintiff to recover, is limited to the right to recover upon the theory of the ratification of the change in the contract. Whether the plaintiff may recover upon the *quantum meruit* simply, without showing an acceptance of the bridge by the county, we for the present leave undetermined.

Appellee does not claim that the second instruction given by the court is correct. That it may have affected the defendant prejudicially there can, we think, be no doubt.

The petition for rehearing is

OVERRULED.