# Rosser *v.* Bunn & Timberlake.

## *Action on Injunction Bond.*

1. *Damages in trespass; set-off.*—In trespass for injuries to lands, entering on them, cutting and carrying away timber, and hauling away sand, the recovery is not confined to the actual injury done, but exemplary damages may also be given by the jury; hence, such cause of action, "sounding in damages merely" (Code, § 2991), which the law is not capable of measuring accurately by a pecuniary standard, is not available as a set-off.

2. *Statutory penalty for cutting trees; set-off.*—The statutory penalty for cutting down trees "willfully and knowingly, without the consent of the owner" (Code, § 3551), is a fixed and definite sum, prescribed and ascertained by law; and a cause of action for such penalty, not being a demand "sounding in damages merely," is available as a set-off.

3. *Same; limitation of action; issue on defective pleading.*—One year is the limitation of an action to recover the statutory penalty for cutting down trees without the consent of the owner (Code, § 3554); and such cause of action being pleaded as a set-off, to which it is replied that the "claim is barred by the statute of limitations of one year," if issue is taken on the replication without objection to its legal sufficiency (*Ib.* § 2996), the court may, without error, instruct the jury that the claim is barred if more than twelve months intervened between the cutting of the trees and the commencement of the action.

4. *Dedication of roads, public or private; presumption from user and lapse of time.*—In the early settlement of the country, when most lands are unreclaimed forests, and constitute a part of the public domain, roads and ways over and through them are made and used when demanded by public or private convenience; and such use of them, without any establishment or recognition as a highway, not being worked or repaired by the public, is neither evidence of a dedication, nor the foundation of a prescriptive right of way. When the lands have been reclaimed, and such ways are left open for use, and are used by the public as highways, these acts may constitute the beginning of a prescriptive right of way, and, if continued for twenty years, without interruption, raise the presumption of a dedication, or grant to the public; and when positive acts are shown, or clear circumstances justify it, a presumption of such dedication may arise in a shorter period of time.

APPEAL from the Circuit Court of Jackson.

Tried before the Hon. LOUIS WYETH.

This action was brought by Henry Bunn and John P. Timberlake, against Walter Rosser and William Washington; was commenced on the 15th April, 1875; and was founded on an injunction bond executed by the defendants (jointly with W. A. Austin, since deceased), the condition of

which was in these words : " *Whereas* the said Walter Rosser
has filed his bill of complaint in the said Chancery Court of
Jackson county, and has obtained thereon an order for the
issuance of an injunction, from the Hon. R. S. Watkins,
chancellor, to restrain and enjoin Henry Bunn and John P.
Timberlake from entering and trespassing upon" certain
lands particularly described, "and from destroying the timber
thereon : Now, if the said Walter Rosser, William Washing-
ton and W. A. Austin, or either of them, shall pay the said
Henry Bunn and John P. Timberlake all damages they may
sustain by the suing out of such injunction, if the same is
dissolved, *then this obligation to remain in full force and effect.*"
The condition of the bond, as here set out, was thus copied
into the complaint; and the breach alleged was, "that the
condition of said bond was broken by the defendants, in this :
that said injunction has been dissolved, and said bill of com-
plaint has been dismissed ; that plaintiffs sustained damages,
to the amount of $500, by reason of the suing out of said in-
junction ; yet the said defendants have not paid said dam-
ages, or any part thereof, but refused, and still refuse to do
so." The bond is copied a second time in the record, as a
part of the chancery suit introduced in evidence on the trial
by the plaintiff; and the condition is again expressed in the
same words as above stated.

The defendants filed four pleas in bar, in substance as
follows : 1. "That at the time said summons was sued out,
plaintiffs were indebted to defendant Rosser, the principal in
said bond sued on, in the sum of $630, by unliquidated de-
mand, for entering upon lands of defendant in Jackson
county, Alabama," describing the lands specified in the bond,
"without said Rosser's permission, and cutting down, carry-
ing away, and converting to his own use, trees and timber
growing thereon in the year 1873, of the value of $580, and
carrying away and converting to their own use 500 wagon
loads of sand, from off said Rosser's lands, without his per-
mission, of the value of $50 ; which defendants hereby offer
to set off against the demand of plaintiffs, and claim judg-
ment for the residue." 2. "That at the time said summons
was sued out, plaintiffs were indebted to defendant Rosser
in the sum of $580, by demand for entering upon the afore-
said lands of the defendant Rosser, willfully and knowingly,
and without the consent of said Rosser cutting down and
carrying away ten hickory, oak, or poplar trees or saplings,
of the value of $10.00 for each tree or sapling, of the value of
$100 in the aggregate, which the defendants hereby offer to
set off against the demand of said plaintiff," &c. 3. "That
said plaintiffs, at the time said summons was sued out, were

[Rosser v. Bunn & Timberlake.]

indebted to defendant Rosser in the sum of $630, by unliquidated demand for entering upon the said lands of said defendant Rosser, willfully and knowingly, and without the consent of the owner, cutting down, deadening, destroying and taking away ninety-six other trees or saplings, not hereinbefore described as hickory, oak and poplar, and so entering upon said lands, and so cutting down, deadening, destroying or taking away said other kinds of trees and saplings, of the value of $5.00 each, and of the aggregate value of $480; the whole amount of said liquidated and unliquidated demands amounting in the aggregate to the sum of $580, and which said several sums defendants hereby offer to set off," &c. 4. "Defendants say, in short by consent, that they do not owe the debt in the complaint mentioned; with leave to give in evidence any matter which, if specially pleaded, would operate a bar to this action."

The plaintiffs demurred to the first, second, and third pleas, assigning as cause of demurrer to each, "that the said claim proposed to be set off against plaintiffs' demand sounds in damages merely." The court sustained the demurrer to the first plea, and overruled it as to the others; and the plaintiffs then replied to the second and third pleas, "that the said demand or claim, so pleaded as a set-off, is barred by the statute of limitations of one year; and plaintiffs also reply and say that they deny the facts stated in said second and third pleas." Immediately after this in the record are these words, "Issue taken on this plea," which are signed by the defendants' attorneys. The judgment entry only recites that the court sustained the demurrer to the first plea, and overruled the demurrer to the second and third, and thereupon came a jury, &c.

The bill of exceptions purports to set out all the evidence adduced on the trial, but a statement of it is not essential to an understanding of the legal points decided. At the time the plaintiffs were enjoined at the suit of said Rosser, they were engaged in making brick and burning a brick-kiln, and the trees cut on Rosser's land were used for the purposes of the kiln. The wood used in burning the kiln was cut on lands belonging to plaintiffs, lying on the other side of a creek, and, after being carried across the creek, was hauled in wagons, through the lands of said Rosser, to the kiln. The road or way through said lands, as used by them, was about three quarters of a mile from the creek to the kiln, while the road which they were compelled to use while the injunction was in force was more than two miles longer. In consequence of the difficulty of getting wood, whether caused by the longer route to be travelled or by high waters in the

[Rosser v. Bunn & Timberlake.]

creek, the fires in the kiln died out before it was burned, and the plaintiffs claimed damages on this account, with others. One of the controverted questions in the case was as to the existence of a road or right of way through Rosser's lands, at the time it was used by the plaintiffs ; and the evidence was conflicting as to this matter.

" The court charged the jury, that if they found the trees and timber mentioned in the defendants' pleas of set-off were by the plaintiffs cut and carried away from the defendants' land in 1873, and that more than twelve months had elapsed since the said cutting and carrying away of said trees, before the plaintiffs instituted this suit; then the sum of money fixed as the value of said trees was not a valid and existing claim against the plaintiffs at the time of the institution of this suit, and the said claim was barred by the statute of limitations of one year."

The defendants excepted to this charge, and requested the following charges, which were in writing : " 1. Before the plaintiffs can claim any damages on account of not being permitted to use the road referred to, for the purpose of hauling their wood, they must show to the satisfaction of the jury that they had a lawful right to use said road through said Rosser's land ; and this right they could only have acquired by the permission of Rosser, or by reason of the road having been dedicated to their use, or to the use of the public, by the decree of a competent court, or have been used for ten years continuously by the public, next before the travelling by defendant referred to in the evidence."

" 2. If the jury believe, from the proof, that the land over which Rosser enjoined or restrained Bunn and Timberlake from driving or passing with their wagons was the property of said Rosser, and that the supposed road running through or over it had not been in use by the public for the past ten years next before the service of the injunction, but that the same had been in part inclosed under the fence of said Bunn, and placed in a state of cultivation as his private property ; then this operated to invest said owner of the land with the right to retake the land so covered by said road, and, before the public could again enter upon its use, they must in some legal manner have removed said obstructions, and re-opened said line of road."

The court refused each of these charges, and the defendants excepted to their refusal ; and they now assign their refusal as error, with the rulings on the pleadings.

ROBINSON & BROWN, HUMES & GORDON, and WATTS & SONS, for appellants.

[Rosser v. Bunn & Timberlake.]

STONE, J.—In the Code of 1876, section 2991, is the following language : " Mutual debts, liquidated or unliquidated demands not sounding in damages merely, subsisting between the parties at the time of suit brought, may be set off, one against the other, by the defendant or his personal representative, whether the legal title be in the defendant or not." It will be observed that demands may be set off, one against the other, to the same extent that debts may be, with the single exception, that such demand, if it sound in damages merely, can not be the subject of a set-off. *Demand,* in this section, must mean more than the word *debt.* Otherwise, its employment was mere tautology, as the word *debt* had been employed, and would have covered the entire ground. " *Demand* is a claim ; a legal obligation ; a word of art of an extent greater in its significance than any other word except *claim.*"—Bouv. Dic. " A thing or amount claimed to be due."—Web. Dic. It is broad enough in its signification to take in all claims, demandable or solvable in money. In *H·lley v. Younge,* 27 Ala. 203, this court said : " What we understand by a demand ' not sounding in damages merely,' is one which, when the facts upon which it is based are established, the law is capable of measuring accurately by a pecuniary standard. But where, as in case of a breach of marriage contract, an assault and battery, or other cases of the like nature, the demand is of a character which, under the rules of law, does not admit of a reduction to a certain money standard, there it sounds in damages merely." This language was employed in reference to the very statute we are construing. In *Gibson v. Marquis,* 29 Ala. 668, the principle above stated was reaffirmed. See, also, *Bell v. Thompson,* 34 Ala. 633 ; *Wood v. Fowler,* 37 Ala. 55 ; *Cage v. Phillips,* 38 Ala. 382 ; *Lang v. Waters,* 47 Ala. 624 ; *Eods v. Murphy,* 52 Ala. 520 ; *Sledge v. Swift,* 53 Ala. 116.

The first plea of set-off was for entering on defendant Rosser's land, without his consent, and cutting and carrying away timber, and hauling sand therefrom. Each of the injuries here complained of is a trespass ; in part, *quare clausum fregit,* and, as to carrying away the timber, *de bonis asportatis.* In each form, the recovery is not confined to the actual injury done. Upon a count for either, the jury, if the testimony justify it, may assess·punitive, or exemplary damages.— *Mitchell v. Billingsley,* 17 Ala. 391 ; *Parker v. Mise,* 27 Ala. 480 ; Sedgw. on Damages, 150 [134–5], 602–5 [530–4]. In *Walker v. McCoy,* 34 Ala. 657, the set-off relied on was damages claimed for a trespass *de bonis asportatis.* This court said : " The defendant's cause of action against the plaintiff was recoverable only in an action of trespass *de*

[Rosser v. Bunn & Timberlake.]

*bonis asportatis.* The law does not prescribe or fix any measure of damages in that action. The plaintiff's demand was, therefore, one sounding in damages merely. For his cause of action he had a right to demand, not only such special damages as he might prove, but also such vindictive damages as the jury might find." The defense was disallowed. The ruling in that case is decisive of this, and the Circuit Court did not err in sustaining the demurrer to the first plea of set-off.

2. Under our liberal system of pleading, the averred facts set forth in the 2d and 3d pleas of set-off present a subject-matter which is available as a defense in that form, under section 3551 of the Code of 1876. They constitute a demand for a fixed sum—a demand on which, when the facts on which it rests are ascertained, the law itself defines the measure of recovery. These pleas aver the trees were cut by plaintiffs on Rosser's land, willfully and knowingly, without the consent of the owner of the land; and this brings the averment within the letter of the statute.

3. The action for the recovery of these specific penalties, however, must be brought within one year from the time the injury was committed.—Code, § 3554. The plaintiff replied the statute of limitations of one year, to these pleas of set-off; and there was issue on that replication, without testing its sufficiency on demurrer.—Code of 1876, § 2996; 2 Brick. Dig. 226, § 129. An issue of fact being thus formed, the question was, whether the injury complained of in the pleas of set-off was done more than twelve months before the action was brought. If it was, the replication to the pleas was sustained.—*Mudge v. Treat,* 57 Ala. 1.

Under the rules above declared, the Circuit Court did not err in the charge defining the statutory bar against the claim pleaded in set-off.

4. The testimony on the question, whether the route, or way, over which the wood was hauled by Bunn and Timberlake, out of which the chancery suit grew, was a public highway or not, was in direct conflict. The testimony of plaintiffs' witnesses tended to show there had been a way open to the public as a highway, and so used, for near or quite fifty years. If this user had existed for twenty years of continuous use, the presumption would arise that the road had been established by law, or that it was dedicated to the public by the owner of the soil.—Washburn on Easements, 173 [126], *et seq. ; Gayethy v. Bethune,* 7 Amer. Dec. 188; *Turnbull v. Rivers,* 15 Amer. Dec. 622; 14 Mass. 49; 3 McCord, 131; *Lawton v. Rivers,* 2 McC. 445— 13 Amer. Dec. 741. In *Baker v. Clark,* 4 N. H. 380, the court

said : "We entertain no doubt that a highway may be proved by long usage ; but a way, to become public, must be used in such a manner as to show that the public accommodation requires it to be a highway, and that it is the intention of the owner of the land to dedicate the way to the public.   *  ·* In this case, there is no evidence that the road was ever opened, or made, or repaired.   There was no attempt to offer any evidence which showed an intention in the owner of the land to dedicate the way to the public, or that public convenience required the way."—*S. C.*, 17 Amer. Dec. 428.   See, also, *Jones v. Percival,* 5 Pick. 485 ; *S. C.,* 16 Amer. Dec. 415, where it is said : " A person does not have a right of way by prescription, by passing over the lands of another in all directions ; nor can a grant of such a way be presumed, however long continued."   Other witnesses in this cause testify there was no such public highway.   Hence we say, the testimony on this question was in conflict.

In early settlements, when most lands are unreclaimed forests, paths and substitutes for roads will be marked out and followed, whenever public, or even private convenience, may call for them.   This practice prevails largely, while the lands are yet the undisposed of public domain ; and paths thus marked out and used, continue to be so used, until the wants of agriculture circumscribe this implied license of travel and transportation, and confine highways to fixed routes.   We can not think such use, unmarked by any recognition of them as highways, not repaired or worked upon by the public, is either evidence of dedication, or the foundation of a prescriptive right to use such way for public travel or transportation.   When lands are reclaimed, and such ways are left open for use, and are used by the public as highways, these acts may constitute the beginning of a right of prescription ; and, if permitted to continue long enough, will raise the presumption of a grant, not to an individual, but to the public ; and inasmuch as there is, in such case, no individual, or definable number of persons, in whose favor the presumption runs, or who can be designated as adverse holders, the statute of ten years' adverse possession, which bars entry on lands, does not apply.   There is no continuous adverse holding.   It requires twenty years to perfect the presumption of grant in such a case.   A presumption of dedication may arise in a shorter time, if positive acts, or clear circumstances justify it.   Merely allowing the public to pass over unreclaimed wild lands, will not, however, raise the presumption of dedication.—*Hoole v. Attorney-General,* 22 Ala. 190 ; *Sultzner v. State,* 43 Ala. 24.

What we have said above, must be confined to cases in

[Brazleton v. The State]

which the alleged road has not been established, or recognized, by any order of the Court of County Commissioners. If so established or recognized, they thereby become public highways, upon which the public have a right to travel ; and such roads are under the superintendence of that court. Code of 1876, § 1619, *et seq.* There is no evidence in this record that the alleged way across the lands of the appellant Rosser was ever established, or recognized, by any order of the Court of County Commissioners.

As we have said above, the testimony is in conflict on the question, whether in fact there was such public road across appellant's lands. That disputed question of fact should have been submitted to the jury, with appropriate instructions. This was not done, and the omission is a marked error, pervading the charge given by the Circuit Court. The part of the affirmative charge first excepted to, ignores this material inquiry of fact, and declares an hypothesis on which plaintiffs were entitled to recover, without any reference to the character of the road. If, under the rules we have declared above, there was no public road across Rosser's lands, then he had the undisputed right to interdict its use by plaintiffs, and such prohibition gave them no right of recovery. The Circuit Court erred in giving that part of the affirmative charge first excepted to. That portion of the affirmative charge second excepted to, is objectionable for the same reason.

What we have said above will be a sufficient guide on another trial. This judgment takes effect as of January 18th, 1878.

Reversed and remanded.

BRICKELL, C. J., not sitting.