# Western Railway of Ala. *v.* Ala. Grand Trunk Railroad Co.

*Bill in Equity for Injunction, between Railroad Companies.*

1.  *Right of public in road by prescription.*—The rule against presuming a dedication of paths and roads marked out through wild lands in early settlements does not apply to a road which, from its earliest use, extended from a town to a public ferry across a navigable river, and the public of such a road as a public highway is the beginning of a prescriptive right-of-way, which, if continued without interruption for twenty years, raises the conclusive presumption of a grant to the public.

2.  *Dedication of country roads.*—If the owner of land in the country has it surveyed and laid off into lots and roads, and a map thereof made and recorded, and sells and conveys lots by their numbers and description on the map, this is a dedication to the public of the spaces marked on the map to indicate roads.

3.  *Same; how width of road ascertained.*—Where land is dedicated as a public road, by the owner selling and conveying parcels thereof according to the numbers and description on a map showing the location of such road, but there is nothing on the map to indicate the width of the road, the character and extent of the use of the public for a period of twenty years determine the width of the way dedicated.

4.  *Same ; extent of easement conferred upon the public.*—The fee in Vol. 96.

[Western R'y of Alabama v. Alabama Grand Trunk R. R. Co.]

land comprising a road dedicated as a public way remains in the owner of the land abutting on the road, subject only to such burdens or easements in favor of the public as were conferred by the act of dedication.

5. *Same; construction of railroad on land dedicated as a country road is an additional burden, entitling owner of fee to compensation.*—The construction of a railroad on land dedicated as a country road, being a use of the land foreign to the purpose for which it was dedicated, constitutes an additional burden or easement, for which the owner of the fee is entitled to compensation; and the State can not deprive the owner of his right to compensation for such additional burden or easement.

6. *Injunction to restrain abuse of its powers by corporation invested with right of eminent domain.*—Courts of equity have a special jurisdiction, to be exercised in proper cases without reference to the insufficiency of legal remedies or irreparable damage, to prevent by injunction the abuse of the power of eminent domain by corporations invested therewith; but an injunction was properly refused in this case, where the complainant, a railway company, being the owner of land abutting on a public road and of the fee in the land embraced in such road, but prohibited by its charter from occupying with its tracks any public road, seeks to enjoin the construction by the defendant of its road-bed on said public road; it appearing that the defendant has legislative permission to construct its railway on public roads, but that it has, without the consent of the complainant and without making it compensation, commenced the construction of its railway on that part of said public road the fee in which belongs to the complainant, but it also appearing that the construction of defendant's railway on said public road will not interfere with the tracks of the complainant or with any track it has the right to construct, that the damage to the complainant would be nominal, that the defendant is solvent, and that to stop its work, under the circumstances, would probably result in disaster to its enterprise, without any substantial advantage to accrue to the complainant.

APPEAL from the Chancery Court of Montgomery.
Heard before the Hon. JOHN A. FOSTER.

BRICKELL, SEMPLE & GUNTER, for appellant, cited *Perry v. New Orleans, &c., R. Co.*, 55 Ala. 413; *Columbus & W. R. Co. v. Witherow*, 82 Ala. 190; *In re Robbins*, 34 Minn. 99; *Taylor v. Armstrong*, 24 Ark. 102; *Anniston & C. R. Co. v. Jacksonville & C. R. Co.*, 82 Ala. 297; *Mobile & G. R. Co. v. Ala. Mid. R. Co.*, 87 Ala. 501; Elliott on Roads, pp. 161, 551; 2 Dillon on Munic. Corp. §§ 703, 704, 404a; Lewis on Em. Domain, §§ 10, 632; High on Injunctions, § 622.

TOMPKINS & TROY, *contra*, cited *M. & G. R. Co. v. Ala. M. R. Co.*, 87 Ala. 520; *Cooper v. A. & A. R. Co.*, 85 Ala. 106; *Schurmeier v. St. P. & P. R. Co.*, 8 Minn. 113; *Zabriskie v. Jersey City, &c., R. Co.*, 13 N. J. Eq. 314; *Booraen v. N. H. Co. R. Co.*, 40 Ib. 557; *Hamilton v. N. Y. & H. R. Co.*, 9 Paige,

171; *Garnett v. Jacksonville, &c., R. Co.*, 20 Fla. 889; *Spencer v. Point Pleasant & O. R. Co.*, 23 W. Va. 406; 55 Ala. 413.

THORINGTON, J.—Appellant is engaged in business as a common carrier, and, as part of its system, operates a railway from Montgomery, Ala., to West Point, Ga. It claims to be the owner in fee of certain lands adjacent to and north of the northern corporate limits of the city of Montgomery, and that said lands are necessary to the proper conduct of its business and the successful operation of its road; that such lands being necessary to its uses, can not be condemned as a right of way by any other railroad company, and that no necessity for such condemnation can arise, for the reason that the lands adjoining appellant's on the west are suitable for such purposes and belong to individuals. The lands so claimed by appellant lie partly in section six, township 16, range 18, and partly in section thirty-one, township 17, range 18, the latter being immediately north of and adjoining the former. The lands in section six formerly belonged to one Tarleton who, in 1835, had the same surveyed and divided into sixteen lots, of twenty acres each, and a plat thereof made and recorded in the office of the judge of probate for Montgomery county, said plat being known as "The Brice Battle plat."

On this plat there is a strip extending northward from the south-west corner of said section six and from the northern city limits along the western end of each of the lots numbered on said map 1, 3, 5, 7, 9, 11, 13, 15, which is marked on said map "Road," and which strip originally constituted part of the tract on which said lots were platted. Shortly before, and also after, the recording of this plat, conveyances of said lots were made by Tarleton and his vendees, referring to said map, and some of them referring in express terms to the fact that a road was reserved from the west end of said lots and east of the range line.

After said lots had been successively conveyed to different parties in the manner above stated, Fleming Freeman conveyed to the Montgomery & West Point Railroad Company, for a right-of-way, a strip of land fifty feet wide on each side of its track, from the center line thereof, commencing at the southern boundary line of said section six and extending northward through said section six, and also through said section thirty-one. This grant also included additional lands east of the track not involved in this case. This deed is, by its terms, confirmatory of prior conveyances made by Figh and Stewart in 1838 to the Montgomery Railroad Com-

pany of the right-of-way over the same lands, but which last mentioned deeds failed to designate the width of such right-of-way. And, in 1856, Freeman executed another deed to said Montgomery & West Point Railroad Company, conveying to it in fee simple the lands in said sections thirty-one and six, embracing the lots above mentioned, and on which the said Jackson Ferry road is located. The two conveyances from Freeman refer in terms to the Brice Battle map and designate the lots by numbers according to said map, and it is by virtue of these two deeds appellant claims the property in controversy, it having succeeded to the property and franchises of both the Montgomery Railroad Company and of the Montgomery & West Point Railroad Company.

The width of the strip marked "Road" on the Brice Battle plat is not designated on the map, but prior to the making of the map a road from ten to twelve feet wide, in 1826, and widening from 1834 from seventy-five to one hundred feet, its present width, was used by the public as a highway, extending over the land indicated on the map as a road, from the southern line of said section six over the western end of said lots and through appellant's lands in said section thirty-one to a public ferry across the Alabama river known as "Jackson's Ferry," and thence into what was then Autauga county. This road was in use by the public, as the proof shows, from 1826, and has been known for about forty years, or more, as the "Jackson Ferry Road."

Appellant's railroad was built about 1838 under a charter granted in 1834 by the legislature of this State to the Montgomery Railroad Company, to the property rights and franchises of which company appellant has succeeded as above stated. Among other provisions of said charter is the following : "And be it further enacted, that in the construction of said railroad the president and directors shall not obstruct or use any public roads now or hereafter to be established, but shall provide convenient ways by which they shall cross the railroad."

In 1891 The Montgomery & Sylacauga Railroad Company obtained from the General Assembly of Alabama an act granting it rights of way across and along public roads, and streets and alleys in unincorporated villages and town-sites, and afterwards, by authority of another act, this company was re-organized under the name of the Ala. Grand Trunk R. R. Co., the new company being the appellee. Pursuant to the legislative authority, aforesaid, appellee obtained from the Board of Revenue of Montgomery county the right to construct its road along said Jackson Ferry Road from Groom

Street at the northern limits of the city of Montgomery, northwards and parallel with appellant's road to the extent (and beyond) that said road passes through appellant's lands; the latter's railroad being east of said Jackson Ferry Road and not on it.

Appellee was proceeding to build its road-bed along said Jackson Ferry Road through said sections six and thirty-one when appellant filed its bill for an injunction, claiming to be the owner of the property on which appellee's road is being constructed, that appellee had entered upon its lands without its consent and without making compensation, that it is not necessary that appellee should take its lands for a right of way, that said lands are necessary to the operation of its own road, and that irreparable damage will result to appellant unless the injunction be granted, and that appellee is insolvent. The bill also contains other averments not material to be considered under the view we take of the case.

Appellee answered the bill, denying appellant's ownership of the property on which it is locating and constructing its road-bed, and averring that it is building its railway on a public road, viz : the said Jackson Ferry road, and that it has authority for such purpose from the General Assembly of Alabama and from the Board of Revenue of Montgomery county, and denying its insolvency, and also denying that irreparable or other damage will result to appellant by the construction of its road, and also setting up as defensive matter many of the facts above detailed. Testimony was taken by both parties, and the cause was submitted on motion to dissolve the injunction, to dismiss the bill for the want of equity, and for final decree. The Chancery Court rendered a decree denying relief, dissolving the injunction and dismissing the bill, and the appeal is from that decree.

*Prima facie*, the bill makes out a clear case for injunctive relief. Not a case of trespass on lands by a corporation or individual not invested with the right of eminent domain which, in order to authorize relief, must be alleged to be attended with the insolvency of the defendant or the insufficiency of legal remedies, but a case which calls for the exercise of the special jurisdiction inhering in courts of equity to prevent abuse of their powers by corporations and individuals invested with the right of eminent domain and to restrain them within the limits of such powers. This last mentioned jurisdiction rests upon a different principle from that which governs in cases of trespass, nuisance or waste, and is exercised by courts of equity, in proper cases, with-

out reference to the insufficiency of legal remedies or irreparable damage.—*Highland Ave. & B. Ry. Co. v. B. U. Ry. Co.*, 93 Ala. 505; *East & West R. R. Co. v. E. T. Va. & Ga. Ry. Co.* 75 Ala. 275.

The case, however, as developed by appellee's answer and the testimony of both parties, assumes a different aspect from that which appears on the face of the bill. We find the facts, reasonably and satisfactorily established by the testimony, to be as hereinabove set forth; whence it appears that appellant, instead of owning for its corporate purposes the property on which appellee is laying its track, has no other claim thereto than such as exists by virtue of the two deeds from Freeman, and that by one of these a mere right of way of fifty feet on the west side of its road is conveyed, which respondent claims does not include the Jackson Ferry road, and which the testimony at least leaves in doubt, and the other deed conveying lands which originally included the land now constituting the Jackson Ferry road, but which, before such conveyance, had become a public road, as to part of it by express dedication, and as to the whole of it by long continued and uninterrupted use by the public under circumstances which had fixed its status as a public road, and which, in point of fact, as some of the witnesses show, had been in use as a public road before the dedication by Tarleton in 1850.

In assuming that the proof shows a right in the public to the Jackson Ferry road by user and prescription we do not ignore the principle declared by this court in the case, cited by appellant, of *Rosser v. Bunn & Timberlake*, 66 Ala. 89, as applicable to paths and roads marked out through wild lands in early settlements and followed whenever private or public convenience call for them, and we observe that some of appellant's testimony shows that at the time the public use of this road was begun "it was a wild and wooded country" from the city to Cypress branch. All inference, however, that the use of this road was commenced as a temporary way through wild lands for private or public convenience is repelled by the controlling fact, shown by the proof, that the road, from the time of its earliest use, extended from the, then, town of Montgomery to a public ferry across a navigable river; and this fact, in connection with the character and length of the user, is not only persuasive but convincing that such user was from its incipiency the beginning of a right of prescription, which by the lapse of twenty years ripened into the conclusive presumption of a grant.—*Rosser v. Bunn & Timberlake, supra*; Elliott on Roads, p. 134.

Whatever rights, however, the public may have acquired in this road prior to the year 1836, there can be no controverting the fact that from and after that year it was, as to part of it, a public highway by the act of the owner dedicating it to the use of the public. In January, 1835, the owner of the property, one Tarleton, had the same surveyed and laid off into lots and roads, and a map thereof made and recorded, said map showing the location of the road in controversy, and, just before and after the recording of such map, lots were sold and conveyed by Tarleton and his vendees, the conveyances referring in terms to the map and describing the lots conveyed according to their numbers on such map. In the case of *Webb v. City of Demopolis*, 95 Ala. 116, at the present term, in speaking of sales of lots described in the conveyances according to a map which the proprietor had placed on record and upon which spaces were marked to indicate streets, this court said: "One thing more, and only one thing, was necessary to complete the dedication so as to make it forever irrevocable. That one thing was the sale and conveyance of lots, or even the sale and conveyance of a single lot, in the town of Demopolis by reference to, and according to, the survey lines of the plan or map which had this street marked upon it. By such sales, or one such sale, every line of the survey which served to mark those parts of the site which were intended to be reserved from sale for the use of the public became unalterably fixed—dedicated to the public for all time."—*Reed v. Mayor &c.*, 92 Ala. 339; *Evans v. C. & W. Ry. Co.*, 90 Ala. 54; *Webb v. Demopolis*, 87 Ala. 569 ; Elliott on Roads and Streets, p. 89. And the same principle applies where sales and conveyances are made according to, or by reference to, an unrecorded map.—*State v. Trask*, 27 Amer. Dec. 554, and authorities cited in note on page 568.

This act of dedication, as above shown, was prior to the deeds from Figh and Stewart to the Montgomery Railroad Company, conveying the right of way, in 1838, and prior to Freeman's deeds in 1850 and 1856 to the Montgomery & West Point Railroad Company. As stated above, however, there was one fact left undetermined by the act of dedication, viz., the width of the road. That is neither shown by any writing on the map nor by inference from anything that appears thereon, there being no scale or other standard of measurements for the spaces indicating on the map the boundaries of the roads. But this defect does not invalidate the dedication, the law, itself, furnishing the mode by which the boundaries are fixed in such cases.—*Knowles v. Musca-*

tine, 20 Ia. 248; *Malloy v. Montgomery*, 48 Ia. 681; *Davenport v. Mutual Savings Assso.*, 15 Ia. 213. The three modes known to the law for fixing the width or boundaries of a road are, [by express dedication, by the judgment of the court in legal proceedings under the right of eminent domain, and, as in this case, where the right to the way depends solely upon user, the width of the way and the extent of the servitude are measured by the character of the user.—Elliott on Roads, p. 283 *et seq.; Ib.* 136.

In the absence of proof to the contrary, it might be presumed, as urged by appellant's counsel, that Tarleton by making the dedication in the form in which it was made, that is, without specifying the width of the road, intended it to be of the width the laws of the State then of force required for all public roads established under its authority, and that would probably be a safe presumption or intendment if the then statutes of the State definitely fixed that fact; but they do not. By Clay's Digest, p. 359, § 13, the law then applicable to this subject, it appears that three classes of roads were recognized, viz., roads of the first, second and third grades; the width of the first being prescribed as not less than thirty feet, the second not less than twenty, and the third not less than fifteen. No basis for the classification of such roads is given by the statute, but it is left to the determination of the County Court of Roads and Revenue of each county. We derive no aid, therefore, from the laws of the State, then of force, in arriving at the width of the Jackson Ferry road, and there being nothing in the testimony which sheds light on the intention of the dedicator, we are remitted to the only determining fact shown by the proof, to-wit, the character or extent of the user by the public.

"If the location of the way is indefinite and uncertain, but there has been a use of a way answering in a general manner to the line described, the use will determine the limits and boundaries of the road."—Elliott on Roads, p. 291. There is testimony showing the width of all that portion of the road which is in controversy, as it was used in 1826; that in 1835 it had begun to widen (but the extent to which use had then widened it is not shown), and we have the present width, both by the oral testimony of witnesses and indicated on a map attached to the deposition of the witness Garrett. It is immaterial to enquire as to the width of the road at the beginning of the *user*, the rule of law being that the established width of a public highway acquired by twenty years *user* is the width of such highway as used at the end of that time.—*Hart v. Trustee, &c.*, 15 Ind. 226; *Eplar v. Winon*,

5 Ind. 459. The testimony of at least one of the witnesses shows that the Jackson Ferry Road has continued the same width it now is since the year 1850, and in this statement he does not appear to be contradicted. Leaving out of view the use of the road by the public prior to the dedication in 1835, this testimony fixes the width of the road at the end of twenty years from that event as being the same it is now, for the entire distance it is in controversy. What has been said, when taken in connection with the testimony of the witnesses who surveyed and located appellee's road-bed, that they located it and commenced its construction on the Jackson Ferry Road as it is now used, and also in connection with the map of the premises as explained by the witness Garrett, it is plain the contention of appellant's counsel in their argument, that appellees' road-bed is being located and constructed east of the said public road, and consequently on appellant's lands, is not sustained by the proof.

Accepting it, therefore, as an established fact that appellee is constructing its railway on a public road under claim of legislative authority, and not on lands of appellant which are necessary to the latter's corporate purposes, the case differs from that made by the bill alone, and to some extent is controlled by different principles.

When Tarleton dedicated to the use of the public for a highway the strip of land constituting part of the Jackson Ferry Road, it was taken for that purpose from the western ends of the lots hereinabove specified by number, he, at that time, being the owner of the lots including such strip. By the act of dedication under these circumstances the fee to the land comprising the road did not pass out of him but remained in him, subject to the public easement, and passed from him through successive vendees to appellant, subject to such easement, at least to the centre of the road, and, if the lands on the opposite boundary of the road were unplatted at the time of the dedication, it extends to the boundary of the road opposite appellant's lots.—*C. & W. Railway Co. v. Witherow,* 82 Ala. 190; *In re Robbins,* 34 Minn. 99; *Taylor v. Armstrong,* 24 Ark. 102; Elliott on Roads, p. 551. Appellant's fee in the road, however, as stated, is subject to the easement or servitude in favor of the public acquired by dedication and by prescription, and its rights in the road as a highway so far as respects the right of passage and travel thereover is simply equal to, but in no sense greater than, that of the general public. None of the conveyances under which it claims the right of way over said road (if it be a fact that the right of way so conveyed includes the road)

vest in it either an exclusive or other right to use the said public road for railroad purposes, nor can it acquire the right to use the same without authority from the State. But the deed to it from Freeman, conveying the fee to the land abutting on the road, and from which the road was originally taken by dedication and prescription, vested in it rights in the road not enjoyed by the public, but peculiar to it as a coterminous proprietor. As such coterminous proprietor and owner of the fee in the road, besides its special "easement of access," as it is called in some of the authorities, appellant has the right of protection from the imposition of any additional burdens or easement upon its fee in the road beyond that included in the easement in favor of the public as a highway. And the question, therefore, arises whether the construction and operation of appellee's railway on and along the said public road, to the extent that said road is bounded by appellant's land, is a use contemplated at the time of the dedication of the road, and for which it must be presumed compensation was made to the original proprietor.

The authority given to appellee by the legislature to construct its railway on public roads, as shown by that part of its charter offered in evidence, did not operate to invest appellee with the fee to the public roads on which its tracks might be laid, but was simply the exercise of the police power of the State by which it conferred on appellee the privilege of using the public highways for its corporate purposes and in such manner as not to obstruct or interfere with the use of the roads by the public and subject to all the rights of the owner of the fee, such fee, under the protection of the Constitution, being beyond legislative divesture, except for a public purpose and on compensation made. It has been declared by this court that where a railroad company under express legislative and municipal authority constructs its road on a street in a city, the fee to which street is in the proprietors of the property abutting thereon, such railway company is not a trespasser nor its railway an unlawful obstruction or nuisance upon such street, and that an injunction will not lie in favor of such proprietor to restrain the construction of the road.—*Perry v. N. O. &c. Railroad Co.*, 55 Ala. 413. But even in such cases if the road is so constructed as to interfere with the easement of access residing in the proprietor of the property abutting on the street, or as to cause other special damage to his property, such proprietor is clothed with the right to prevent such injury by resort to a court of equity, or to redress the

[Western R'y of Alabama v. Alabama Grand Trunk R. R. Co.]

same in a court of law as he may elect.—*Highland Ave. & B. R'y. Co. v. Matthews*, 10 So. Rep. 267; *Evans v. Sav. & West. R'y. Co.* 90 Ala. 54.

In many respects a broad distinction is recognized in the authorities between urban, and suburban and rural servitudes. A vast variety of uses to which the first may be applied without compensation to the owner of the ultimate fee, as having been within contemplation when the street was dedicated or condemned, would be an additional burden for which compensation must be made to owners of abutting property when the highway is a suburban or country road. "The limited or restricted nature of the servitude of a suburban road undoubtedly leaves a very much greater right and interest in the owner of the servient estate than that which remains in the owner of a like estate in a city street, but it is not possible under the authorities as they now stand to mark with exactness and precise accuracy the extent of the interests and rights which remain in the owner of the servient estate in a country road."—Elliott on Roads, &c., p. 303. The same author from whose work the above is quoted discusses the subject at length, and in the authorities reviewed by him many uses are shown to be applicable to the easement in city streets which could not be imposed upon suburban or country roads without compensation to the owners of abutting property. The same subject is discussed in the following authorities : *Pacific Post Tel. Cable Co. v. Irvine*, Federal Reporter, Vol. 49, No. 2, p. 113; *Board of Trade v. Barnett*, 107 Ill. 507; *Murray v. Gibson*, 21 Ill. App. Rep. 488; *Ind. &c. Ry. Co. v. Hartley*, 67 Ill. 439; *Sterling's Appeal*, 111 Penn. St. 35. But this distinction is not approved by the author of Pierce on Railways.—Pierce on Railways, p. 232. The great weight of authority, however, is in favor of the proposition that a railroad constructed upon a street in a city, and operated with steam cars, is an additional burden when the ultimate fee to the street is in the owners of the attingent property, for which compensation must be made, and that is the doctrine approved by this court.—*C. & W. Railway Co. v. Witherow*, 82 Ala. 190; and authorities there cited. The reasoning in all these cases, as applied to the easement in city streets, applies with even greater force to the easement in suburban and country roads, and supplies abundant argument to show such use is foreign to any and all uses contemplated by the act of dedication, in the absence of statutory regulation to the contrary.

It results, that the construction of appellee's railroad on the Jackson Ferry Road constitutes an additional burden or

easement upon appellant's fee in said public road, and that appellee, a corporation invested with the right of eminent domain, is undertaking without *ad quod damnum* proceedings under the statutes, and without first making compensation to appellant, to take the property of the latter for its own use. It is, therefore, in its essential features a case of that class coming within the special jurisdiction of courts of equity to prevent by injunction the abuse of their powers by corporations and individuals invested with the right of eminent domain by restraining them within the limits of a proper exercise of this extraordinary power, without reference to the sufficiency of legal remedies or irreparable damage.—*H. A. & B. R'y. Co. v. B. U. R'y. Co.* 93 Ala. 505.

While, however, this special jurisdiction is clearly established, it is not in every case of this kind that a court of equity will interfere, but it will be governed by the facts and circumstances of each particular case. For instance, in the case last above cited it is said: "Though relief is granted more readily to a land owner whose lands are entered upon by a corporation having compulsory powers to take them for its uses and upon different principle than in cases of trespass, waste or nuisance; yet, as in such cases, if the right and title of the party complaining are not clear or if the whole controversy resolves itself into a naked dispute as to the strength of the legal title, and it be not shown that an action of trespass or ejectment will not afford all necessary relief, the court will not interfere by injunction . . . . . . . . . . In such circumstances a court of equity should not interfere by way of injunction to restrain the commission of an act alleged, on the one hand, to be a trespass, and, on the other hand, claimed, apparently in good faith, to be a legitimate exercise of a legal right; and the parties should be remitted to their respective remedies at law." And, again, it has been said that when the facts and circumstances of the case show that an injunction might operate greatly to the prejudice of the defendant, as well as to the public, without any corresponding advantage to complainant, or any one else, the injunction will not be granted but the parties will be left to their respective remedies at law.—*H. A. & B. R'y. Co. v. B. U. R'y. Co.*, 93 Ala. 505; *Schumeier v. St. P. & P. Railroad Co.*, 8 Minn. 113; *Zabriskie v. Jersey City Railroad Co.*, 13 N. J. Eq. 314; *Garnett v. Jacksonville, &c. Railroad Co.*, 23 W. Va. 406. In High on Injunctions, § 598, it is said, "In exercising its jurisdiction over cases of this nature a court of equity will in the use of a sound discretion balance the relative inconvenience and injury which is likely to result

from granting or withholding the writ and will be largely governed by such circumstances in determining upon the relief. And where an injunction restraining the use of a railway would not only be productive of great injury to the railway company and the public, but would result in no corresponding advantage to any one, not even to the person asking such relief, it will not be granted."

In the case before us, appellant's property, upon which appellee, under a claim of legislative authority, is constructing its road, instead of being essential to the operation of its own railway, as averred in the bill of complaint, is a public road on which appellant, under charter provisions shown by the proof to be binding on it, is prohibited from constructing and operating its railway—and instead of irreparable damage resulting to appellant from appellee's said act, as alleged in the bill, it appears that such damage, if any has been, or will be, sustained, is merely nominal, there being nothing to show the character of appellant's property abutting on said public road or that it is or will be damaged by the embankment it is alleged appellee has raised for its road-bed. And instead of appellee being insolvent, as averred in the bill, it is entirely solvent, so far as anything to the contrary appears in the proof. Furthermore, it appears that appellee's road-bed has been partly graded on said public road, that it does not interfere with the tracks of appellant's road or with any tracks it has the right to construct, and that to stop appellee's work by injunction, would, under the circumstances, probably result in grievous disaster to its enterprise (which is of a public nature), without any advantage to accrue to appellant.

We do not consider it a proper case for the intervention of a court of equity by injunction, but one in which appellant should be left to the assertion of its legal rights in a court of law.

There is no error in the decree of the Chancery Court, and it is accordingly affirmed.