PER CURIAM.
An action by the City of Rainsville against Burma Thomas, seeking a declaration that a fence erected by her across a “public street” was a public nuisance, resulted in a judgment adverse to Ms. Thomas. She appeals.
Three issues are presented: Did the trial court err:
1)in denying Appellant’s motion for summary judgment, in light of the fact that the official minutes of the City do not disclose any authorization by the city council to institute the present action?
2) in finding that Mince Drive was a public road by prescription? or
3) in rejecting Ms. Thomas’s defense of estoppel, based on the City’s alleged acquiescence in her obstruction of the roadway?

Authority to Sue

Appellant acknowledges that Rule 9(a), A.R.Civ.P., mandates:
“When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader’s knowledge.”
Appellant, however, seeks to excuse her failure to so raise the authority-to-sue issue, urging this Court to recognize a distinction between “capacity,” as that term is commonly used, and “authority,” as that term is here applicable. It is not the City’s lack of statutory authority to institute a suit for the abatement of a public nuisance (§§ 11-47-117, -118, and 6-5-122), says Appellant, but the failure of the city council’s official minutes to reflect its decision to sue (§ 11-43-43), that characterizes her authority-to-sue defense; thus, she says, this defense may be timely filed at the close of all the evidence.
Finding no rational basis for the distinction, and because the language of the Rule, as well as the Committee Comments to that Rule, embrace both “capacity” and “authority,” we hold that the trial court did not err in denying the defendant’s motion for directed verdict on this ground. Moseley v. Commercial State Bank, 457 So.2d 967 (Ala.1984)

Dedication by Prescription

Both parties acknowledge that one of the ways in which a “public road” may be established is by general use by the public for 20 years. City of Tallassee v. Harris, 431 So.2d 1177 (Ala.1983). The trial court, sitting without a jury, relied upon this *348 method — prescription—in declaring Mince Drive to be a public way. Likewise, both parties correctly state the two variations in the prescription method of establishing a public way, the distinction depending upon whether the road in question runs through “improved or reclaimed” land or across “unimproved or unreclaimed” land. The 20-year public-use element remains a constant in the prescription method; and the variations relate only to the burden of proof. The “improved land” rule is stated in Ayers v. Stidham, 260 Ala. 390, 71 So.2d 95 (1954):
“It is now settled in this state that an open, defined roadway, through reclaimed land, in continuous use by the public as a highway without let or hindrance for a period of twenty years becomes a public highway by prescription. When such circumstances are shown, a presumption of dedication or other appropriation to a public use arises. The burden is then on the landowner to show the user was permissive only, in recognition of his title and right to reclaim the possession.” 260 Ala. at 392, 71 So.2d at 97.
The “unimproved land” rule is set out in Benson v. Pickens County, 260 Ala. 436, 70 So.2d 647 (1954):
“But this [‘improved land’] principle has been held to be limited in its application to ‘well-defined highways running over improved or reclaimed lands, and is not applicable to wooded or unimproved lands, or lands which, though once reclaimed, have been “turned out,” or left open and unused.’ ... In such latter case [‘unimproved land’] mere user without tending to show adverse user under claim of right does not raise a presumption of dedication.” 260 Ala. at 438-39, 70 So.2d at 649.
The rationale for the distinction is explained in Rosser v. Bunn & Timberlake, 66 Ala. 89 (1880):
“In early settlements, when most lands are unreclaimed forests, paths and substitutes for roads will be marked out and followed, whenever public, or even private convenience, may call for them. This practice prevails largely, while the lands are yet the undisposed of public domain; and paths thus marked out and used, continue to be so used, until the wants of agriculture circumscribe this implied license of travel and transportation, and confine highways to fixed routes. We can not think such use, unmarked by any recognition of them as highways, not repaired or worked upon by the public, is either evidence of dedication, or the foundation of a prescriptive right to use such way for public travel or transportation. When lands are reclaimed, and such ways are left open for use, and are used by the public as highways, these acts may constitute the beginning of a right of prescription; and, if permitted to continue long enough, will raise the presumption of a grant.... Merely allowing the public to pass over unreclaimed wild lands, will not, however, raise the presumption of dedication.” 66 Ala. at 95.
Under Ayers, therefore, if Mince Drive runs across improved or reclaimed land and has been in use by the public without hindrance for 20 years, then a presumption of adverse use arises, thereby shifting the burden to Ms. Thomas, the landowner, to show the use was permissive. Under Benson, however, if the same circumstances exist, except that the land is unimproved or unreclaimed, then a presumption arises that the use is merely permissive and the burden remains on the City of Rainsville to establish adverse use.
For cases recognizing and applying these two distinct rules (i.e., variations in the standard of proof), see Ford v. Alabama By-Products Corp., 392 So.2d 217 (Ala. 1980); Locklin v. Tucker, 208 Ala. 155, 93 So. 896 (1922); Trump v. McDonnell, 120 Ala. 200, 24 So. 353 (1898); and Rosser v. Bunn & Timberlake, 66 Ala. 89 (1880).
The evidence of record clearly supports the trial court’s finding that the road in question was built across improved or reclaimed land; thus, it correctly applied the doctrine of prescription in favor of a public dedication. A detailed recital of the *349 facts is not necessary; suffice it to say, it is undisputed that Ms. Thomas’s predecessor in title initially constructed the road in 1959 in furtherance of his commercial development of a portion of an 80-acre tract then owned by him. The road ran west from and perpendicular to State Highway 75 for 210 feet and then parallel to Highway 75 for 585 feet, where it ran into Dilbeek Road.
Although no subdivision plat was ever made for public record, there can be little doubt that the former owner built the road to assist him in the development of his land, including the subsequent sale of several business lots. Testimony of prior owners of Ms. Thomas’s house, other neighbors, and former, as well as present, city officials established that this road was used continuously by the public from its inception until it was obstructed by Ms. Thomas.
Applying the “improved land” rule of prescription, we hold that the trial court did not err in its finding that the road in question met the requisite test for prescriptive dedication as a public way.

Estoppel

Assuming, without deciding, that Appellant is not barred, as a matter of law, from invoking the doctrine of estoppel, we cannot accept Appellant’s position that the trial court erred in not applying estoppel under the facts of this case. A substantial portion of Appellant’s factual premise for the application of the doctrine was sharply disputed by the City; because the conflicting evidence was presented ore tenus, the trial court’s findings of fact are accepted on appeal as correct. Therefore, we need not reach the more abstract issue of whether the City’s conduct may constitute a waiver or release of the right of its citizens with respect to the use of a public way. See Nixon v. City of Anniston, 219 Ala. 219, 121 So. 514 (1929).
AFFIRMED.
TORBERT, C.J., and JONES, SHORES, ADAMS and STEAGALL, JJ., concur.