533 So.2d 581 (1988)
Annette McINNIS and Marie Madison
v.
Luther LAY, Randolph Lay, and Henry Shiver.
87-413.
Supreme Court of Alabama.
September 16, 1988.
*582 J. Don Foster and Thack H. Dyson of Foster, Wills, Bolton & Dyson, Foley, for appellants.
C.G. Chason and Pamela W. Baschab of Chason & Underwood, Foley, for appellees.
HOUSTON, Justice.
Luther Lay, Randolph Lay, and Henry Shiver filed suit on January 5, 1987, in Baldwin County Circuit Court against Annette McInnis and Marie Madison. In the first count of their complaint, they asked the court to establish a permanent easement across McInnis's property and to enjoin her from obstructing that easement. In the second count, Randolph Lay and Shiver asked the court to determine the boundary line between their property and that belonging to Madison. Plaintiffs later amended the complaint, naming Darrell Leonard as a defendant and asking the court to also determine the boundary line between their property and his. After hearing ore tenus testimony, the trial court entered judgment for the plaintiffs. This appeal followed. We affirm in part, reverse in part, and remand.
An appendix to this opinion shows the location of the various parcels of property owned by the parties. The following facts are largely undisputed: Leonard owns the northern 3.33 acres of parcel 5. Madison owns the remainder of that parcel. A 13-foot-wide roadway extends east from the county road along the southern boundary of parcel 1.076 (the McInnis property) to parcel 2 (property owned by the United States Government). The roadway has been obstructed, at least since 1984, by a fence erected by the United States Government on its property. Prior to its being obstructed, however, the roadway continued eastward along the northern boundaries of parcels 4 (the Shiver property) and 3 (Luther Lay's property) until it reached Sandy Creek. Skipper Road, built in the early 1980's, now bisects the roadway. The roadway has been in existence for well over 20 years and has been used by the various owners and tenants of parcels 3, 4, and 7 (Randolph Lay's property) as a means of ingress and egress. In the past, the roadway was also used by the general public in order to reach Sandy Creek, a recreational area.
At this point, we should note that where a trial court has heard ore tenus testimony, as in this case, its judgment based upon that testimony is presumed correct and will be reversed only if, after consideration of the evidence and all reasonable inferences to be drawn therefrom, the judgment is found to be plainly and palpably wrong. Robinson v. Hamilton, 496 So.2d 8 (Ala.1986). Of course, this rule is without application when the trial court erroneously applies the law to the facts before it. League v. McDonald, 355 So.2d 695 (Ala.1978).
*583 In the present case, the trial court, applying the well known principles of adverse possession as between coterminous property owners, see Robinson v. Hamilton, supra, established the boundary line between that parcel owned by Madison and Leonard, and those parcels owned by Shiver and Randolph Lay. Without going into a discussion of the conflicting testimony given at trial, suffice it to say that our review of the record does not indicate that the trial court's judgment in this regard is plainly and palpably wrong.
The trial court also found that that section of the roadway extending eastward from the county road across the McInnis property to that property owned by the United States Government had become a public road by the general, adverse use of the public for 20 years. See Thomas v. City of Rainsville, 502 So.2d 346 (Ala. 1987). Defendants contend that this finding is not supported by the evidence. They argue that the plaintiffs bore the burden of proving that the public's use of the roadway in question was continuous and adverse for a period of 20 years and that they did not meet that burden. On the other hand, the plaintiffs contend that the trial court's finding is supported by the evidence. They argue that the evidence tended to show continuous, public use for a period of 20 years and that the defendants bore the burden of proving that the use of the roadway was permissive, a burden, they say, the defendants did not meet.
In Thomas v. City of Rainsville, supra, at 348, the Court, quoting Ayers v. Stidham, 260 Ala. 390, 392, 71 So.2d 95, 97 (1954), stated as follows:
"`It is now settled in this state that an open, defined roadway, through reclaimed land, in continuous use by the public as a highway without let or hindrance for a period of twenty years becomes a public highway by prescription. When such circumstances are shown, a presumption of dedication or other appropriation to a public use arises. The burden is then on the landowner to show the user was permissive only, in recognition of his title and right to reclaim the possession.'"
The Court continued, quoting Benson v. Pickens County, 260 Ala. 436, 438-39, 70 So.2d 647, 649 (1954):
"`But this ["improved land"] principle has been held to be limited in its application to "well-defined highways running over improved or reclaimed lands, and is not applicable to wooded or unimproved lands, or lands which, though once reclaimed, have been `turned out,' or left open and unused." ... In such latter case ["unimproved land"] mere user without tending to show adverse user under claim of right does not raise a presumption of dedication.'"
The rationale for the "improved land"/"unimproved land" distinction was then explained by the Court, quoting Rosser v. Bunn & Timberlake, 66 Ala. 89, 95 (1880):
"`In early settlements, when most lands are unreclaimed forests, paths and substitutes for roads will be marked out and followed, whenever public, or even private convenience, may call for them. This practice prevails largely, while the lands are yet the undisposed of public domain; and paths thus marked out and used, continue to be so used, until the wants of agriculture circumscribe this implied license of travel and transportation, and confine highways to fixed routes. We can not think such use, unmarked by any recognition of them as highways, not repaired or worked upon by the public, is either evidence of dedication, or the foundation of a prescriptive right to use such way for public travel or transportation. When lands are reclaimed, and such ways are left open for use, and are used by the public as highways, these acts may constitute the beginning of a right of prescription; and, if permitted to continue long enough, will raise the presumption of a grant.... Merely allowing the public to pass over unreclaimed wild lands, will not, however, raise the presumption of dedication.'"
See also, Ford v. Alabama By-Products Corp., 392 So.2d 217 (Ala.1980); Trump v. McDonnell, 120 Ala. 200, 24 So. 353 (1898).
*584 In the trial court's order denying defendants' post-trial motion to alter, amend, or vacate the judgment, or, in the alternative, for a new trial, the trial court stated as follows:
"After reviewing testimony [presented] ore tenus the court remains convinced that the 13-foot roadway which lies along the south 13 feet of the property now owned by defendant McInnis does not fall within the definition of `turned out' land because, the strip lay on the south side of a woodland tract and ... all of the adjoining tracts were used by various families for farming purposes. Therefore, the Magnolia Land Company's predecessor in title should have been put on notice that members of the public as well as the plaintiffs' predecessors in title were using the strip of land that lay along his southern boundary."
After reviewing the record, which is not at all clear on the matter, we interpret this order as setting forth a finding that the tract of land over which the roadway runs (the McInnis property) was, in fact, "unimproved" most of the time preceeding McInnis's moving onto the property in 1985, but, nevertheless, could not be characterized as "unimproved" because adjoining tracts had, for many years, been used for farming purposes. It appears, therefore, that the trial court concluded that the roadway traversed an "improved" tract of land, thus creating a presumption of prescriptive dedication. Apparently, the court then found that the defendants failed to rebut that presumption by showing that the use of the roadway was permissive. Assuming that we have correctly interpreted the trial court's order, we think the trial court misapplied the law to the facts and, consequently, erroneously placed on the defendants the burden of disproving adverse public use.
Where a road runs over wooded or "unimproved" land, or land which, though once reclaimed, has been "turned out" or left open and unused, there is no presumption of dedication by mere use; rather there is a presumption of permissive use, and the user must establish his use as adverse to that of the owner. "This principle is grounded on sound policy. Otherwise, an owner with no present use for the land over which the road runs would be required to suffer the expense of taking affirmative action to prevent travel over his unused land to avoid having a public road established on that land." Ford v. Alabama By-Products Corp., supra, at 219. (Emphasis added.) We can see no basis upon which to conclude that the character of a tract of wooded or "unimproved" land should be altered by its mere proximity to another tract, or other tracts, of "improved" land. The interest sought to be protected by the "unimproved" land presumption is that of the owner of the land over which the road runs.
"The presumption in such cases is that the user is permissive; and it is a perfectly natural presumption, since the use conflicts with no interest of the owner in the land, does not interfere with any use he presently desires to make of it, nor curtail or limit in any way his enjoyment of it in the state and condition in which he has put it or allowed it to remain, and very frequently ... conserves the ends of good neighborhood."
Trump v. McDonnell, 120 Ala. at 204, 24 So. at 354. We hold, therefore, that the burden does not lie with the owner of "unimproved" land over which a road runs to disprove adverse public use merely because adjacent or nearby landowners have chosen to "improve" their property. In the case at bar, the trial court erred in characterizing the McInnis property as "improved" and, thus, erred in requiring the defendants to disprove adverse public use. Under the facts of this case, as we understand them, the burden was on the plaintiffs to prove continuous, adverse public use for a period of 20 years. Our review of the record indicates that they did not meet that burden. Plaintiffs introduced evidence at trial tending to show that the roadway in question had existed for well over 20 years and had, in fact, been used over the years by the owners and tenants of parcels 3, 4 and 7, as a means of ingress and egress, as well as by members of the general public to reach a recreational area on Sandy Creek. *585 However, we are unable to find any evidence tending to show that this use was adverse for the prescriptive period. As previously stated, where a road runs over wooded or "unimproved" land, there is no presumption of dedication by mere use. Because the plaintiffs failed to prove an essential element of prescriptive dedication (i.e., adverse public use), that portion of the judgment of the trial court establishing the roadway in question as a public road must be reversed.
For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.
MADDOX, J., concurs in the result.
MADDOX, Justice (concurring in the result).
I concur in the result, because the trial judge made the following finding of fact:
"After reviewing testimony [presented] ore tenus the court remains convinced that the 13-foot roadway which lies along the South 13 feet of the property now owned by defendant McInnis does not fall within the definition of `turned out' land, because the strip lay on the south side of the woodland tract and ... all of the adjoining tracts were used by various families for farming purposes." (Emphasis added.)
The only reason given by the trial judge that the land was not "turned out" land was that "the strip lay on the south side of the woodland tract and ... all of the adjoining tracts were used by various families for farming purposes." While the nature of the use of surrounding land can be a factor in determining whether land is "turned out," I agree that the character of the use of the surrounding land cannot be the only factor that the trier of fact can consider. There is in this record evidence that the road passed over property on which Mrs. McInnis's mobile home was located; that surrounding land had been used for farming and turpentine operations; that the entire community, including the Boy Scouts, had used the road to get to a picnic area; that it was the only road to get to the Roberts, Foley, Shiver, and Lay fields or to the picnic and camping area; and that it was perpendicular to the county road and passed over to what is now Skipper Road. Also, the mere fact that the land had timber on it does not automatically mean that it was "unimproved." I believe that we can take judicial notice of the fact that timber farming is widespread in the State of Alabama.
As I view it, "turned out" land has a special character. One of the best definitions of the concept of when land is "improved" or "unimproved," insofar as public roadways are concerned, is contained in the early case of Rosser v. Bunn & Timberlake, 66 Ala. 89 (1880). In that case, the Court stated:
"In early settlements, when most lands are unreclaimed forests, paths and substitutes for roads will be marked out and followed, whenever public, or even private convenience, may call for them. This practice prevails largely, while the lands are yet the undisposed of public domain; and paths thus marked out and used, continue to be used, until the wants of agriculture circumscribe this implied license of travel and transportation, and confine highways to fixed routes. We cannot think such use, unmarked by any recognition of them as highways ... is either evidence of dedication, or the foundation of a prescriptive right.... When lands are reclaimed, and such ways are left open for use, and are used by the public as highways, these acts may constitute *586 the beginning of a right of prescription; and, if permitted to continue long enough, will raise the presumption of a grant ... to the public...."
66 Ala. at 95.
There is evidence in the record from which the trial judge could have found that the land was, in fact, "improved." The reason he gave in his order, however, I believe would not be sufficient. Therefore, I concur in the result.
*587