I concur in the result, because the trial judge made the following finding of fact:
 "After reviewing testimony [presented] ore tenus
the court remains convinced that the 13-foot roadway which lies along the South 13 feet of the property now owned by defendant McInnis does not fall within the definition of 'turned out' land, because the strip lay on the south side of the woodland tract and . . . all of the adjoining tracts were used by various families for farming purposes." (Emphasis added.)
The only reason given by the trial judge that the land was not "turned out" land was that "the strip lay on the south side of the woodland tract and . . . all of the adjoining tracts were used by various families for farming purposes." While the nature of the use of surrounding land can be a factor in determining whether land is "turned out," I agree that the character of the use of the surrounding land cannot be the only factor that the trier of fact can consider. There is in this record evidence that the road passed over property on which Mrs. McInnis's mobile home was located; that surrounding land had been used for farming and turpentine operations; that the entire community, including the Boy Scouts, had used the road to get to a picnic area; that it was the only road to get to the Roberts, Foley, Shiver, and Lay fields or to the picnic and camping area; and that it was perpendicular to the county road and passed over to what is now Skipper Road. Also, the mere fact that the land had timber on it does not automatically mean that it was "unimproved." I believe that we can take judicial notice of the fact that timber farming is widespread in the State of Alabama.
As I view it, "turned out" land has a special character. One of the best definitions of the concept of when land is "improved" or "unimproved," insofar as public roadways are concerned, is contained in the early case of Rosser v. Bunn Timberlake, 66 Ala. 89 (1880). In that case, the Court stated:
 "In early settlements, when most lands are unreclaimed forests, paths and substitutes for roads will be marked out and followed, whenever public, or even private convenience, may call for them. This practice prevails largely, while the lands are yet the undisposed of public domain; and paths thus marked out and used, continue to be used, until the wants of agriculture circumscribe this implied license of travel and transportation, and confine highways to fixed routes. We cannot think such use, unmarked by any recognition of them as highways . . . is either evidence of dedication, or the foundation of a prescriptive right. . . . When lands are reclaimed, and such ways are left open for use, and are used by the public as highways, these acts may constitute *Page 586 
the beginning of a right of prescription; and, if permitted to continue long enough, will raise the presumption of a grant . . . to the public. . . ."
66 Ala. at 95.
There is evidence in the record from which the trial judge could have found that the land was, in fact, "improved." The reason he gave in his order, however, I believe would not be sufficient. Therefore, I concur in the result. *Page 587