# Mobile and Montgomery Railway Co. v. Alabama Midland Railway Co.

*Bill in Equity to enjoin a Railroad Company from Constructing its Track along the Streets of a City.*

1. *Power of municipality over streets; to what uses streets may be applied.*—The public streets of an incorporated city or town, whether dedicated by the owners of a fee or acquired under the right of the exercise of eminent domain, are subject to the sovereign police powers of the State, which may be delegated to municpal authorities; and the legislature or a municipality, in the exercise of delegated power, may, by express enactment, authorize a railroad company to lay its tracks across or through the streets of a city; but where the street has been dedicated to the public as a highway, the ultimate fee remaining in the original owners of the soil, such authority must be granted subject to the rights of abutting proprietors under the constitution and laws of the State, who may have acquired rights by the

terms of the dedication under which the street was set apart, and may sustain special injury thereby.

2. *Injunction against construction of railroad in public street; abutting proprietor can maintain bill therefor.*—The owner of a lot in an incorporated city or town, abutting on a public street, having the ultimate fee therein to the middle of the street, may come into equity to prevent, by injunction, the construction of a railroad in such street without authority of law, whereby his property will be injured.

3. *Bill by one railroad company to enjoin another from building its track in the street of a city; when bill contains equity.*—Where a railroad company, which owns lots abutting on a public street, having the ultimate fee to the middle of the street, files a bill against another railroad company to enjoin the defendant from constructing its railroad along said street, and it is averred therein that under the supposed authority granted by the ordinance of the city, the defendant was constructing its railroad along said street to the injury of complainant's property, without the condemnation of the right in the mode prescribed by law, and without, in obedience to the constitution, making just compensation therefor to the complainant, such bill contains equity, and it is error to dismiss it on motion of defendant for the want of equity.

4. *Same; when injunction should not be granted.*—While the bill in such a case contains equity, if, upon the coming in of the answer, the defendant sets out at length its authority for constructing its road along said street, and it appears that the construction of such road will not interfere with the enjoyment of the complainant's property, and that the damage to the complainant would be small, while the damage to the defendant, in restraining the construction of the road, which was important to the public as well as to the defendant for terminal facilities, would be very great, the court, in the exercise of a sound judicial discretion vested in it, should refuse to interfere by injunction, leaving the parties to legal remedies; it not being averred in the bill that the defendant was insolvent.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. A. D. SAYRE.

The bill in this case was filed by the Mobile & Montgomery Railway Company and the Louisville & Nashville Railroad Company against the Alabama Midland Railway Company. The allegations of the bill and the facts of the case are set forth at length in the opinion.

The prayer of the bill was "that a preliminary injunction issue enjoining and restraining said Alabama Midland Railway Company, its officers, agents, and servants, from occupying or keeping possession of any part of what was formerly known as River street, in the city of

Montgomery, which lays north of the center of said
street and adjacent to the property of complainants,
and more particularly described in paragraph 3 of this
bill ; and also from operating cars on any tracks there-
on, or building any structures thereon, or interfering
with or changing the grade thereof, or otherwise ob-
structing the use of the same ; and also from removing
or in anywise using the track already laid in said parts
of said street north of the center thereof ; and that on
final hearing said injunction be made perpetual ; and
complainants, if anywise they have mistaken their re-
lief, pray for all such other and further or different re-
lief, as they may be entitled to in equity and good con-
science.''

Upon the submission of the cause, on the motion of
defendant to dismiss the bill for the want of equity and to
dissolve the injunction, a decree was rendered dissolving
the injunction and ordering the complainants' bill dis-
missed.   From this decree the complainants appeal, and
assign the rendition thereof as error.

THOS. G. JONES, for appellant.—1.   The bill clearly
contained equity on two grounds :   First, to prevent the
unlawful and unwarranted interference with the station
and depot grounds held and used under a corporate
franchise.—*City Council of Montgomery v. L. & N. R. R.
Co.*, 84 Ala. 127 ; *Port of Mobile v. L. & N. R. R. Co.*, 84
Ala. 115.   Secondly, to restrain the defendant from the
abuse of corporate power, and to prevent the lawless
taking or injury of complainants' property by a corpor-
ation, which has not offered compensation, and had not
resorted to condemnation proceedings.—*E. & W. R. R.
Co. v. E. T., V. & G. R. R. Co.*, 75 Ala. 280 ; *Western Rail-
way of Ala. v. Ala. G. Trunk R. R. Co.*, 96 Ala. 272 ;
*Western Un. Tel. Co. v. Judkins*, 75 Ala. 430 ; High on
Injunctions, 622 ; Pierce on Railroads, 167-8 ; *C. & W.
R. R. Co. v. Witherow*, 82 Ala. 190 ; Constitution of Ala-
bama.   Sec. 7, Art. XIV ; *Northern Pac. R. R. Co. v. St.
Paul, &c. R. R. Co.*   1 Am. & Eng. R. R. Cases, 12.

2.   Grants of power to municipal corporations to per-
mit the use of streets are liberally construed in favor of
the citizen, and strictly against those claiming under
such grant.   The courts realize how prone municipal
corporations are to oppress the citizen.—2 Dillon on

Municipal Corp., p. 897, § 908. The grant of power here is to "authorize the use of the *streets* of said city for horse, steam or electric railroads and to regulate the same." Such a grant gives no power to permit even the streets to be used exclusively by any railroad; nor to authorize the streets to be fenced, nor to stand cars thereon, nor to be graded and used at the discretion of the railroad company, as against abutting proprietors. *Daly v. G. R. R. Co.*, 36 Amer. & Eng. R. R. Cases, 20.

3. It has been expressly decided by this court that there can be no exclusive grant to use the street to one railroad only.—*Birmingham R. R. Co. v. Street Railway Co.*, 79 Ala. 465; *Lackland v. R. R. Co.*, 31 Mo. 180; *State v. Railroad Co.*, 25 N. J. Eq. 437; *Belcher Sugar Ref. Co. v. St. Louis &c. Co.*, 82 Mo. 124; 29 Amer. & Eng. R. R. Cases, 610; *Mayor v. Moog*, 53 Ala. 561.

4. The answer sets up nothing that justifies the dissolution of the injunction. The rights of an adjoining proprietor in a public street, do not stop at the center of the street. "He may, for that matter, have no fee beyond the boundary of his lot, yet have appurtenant rights in the entire street opposite his premises."—*R. R. Co. v. Applegate*, 8 Dana 289; *McQuaid v. R. R. Co.*, 40 A. & E. R. R. Cases, 313. "The right of the owner of adjoining land to the use of the highway is as much property as the land itself. It is appurtenant to the land and protected by the Constitution."—*Haynes v. Thomas*, 7 Ind. 38; *Protzman v. R. R. Co.*, 9 Ind. 467; *Crawford v. Delaware*, 7 Ohio St. 459. See also elaborate discussion of the question in *Story v. Elevated Railroad*, 90 N. Y. 123. Remembering how the denials of the answer are sworn to, to-wit, "that the allegations, statements and averments therein contained are to the best of his knowledge, information and belief," the case is one where it is peculiarly fit for the court to retain the injunction, notwithstanding such denials.—*Purnell v. Daniel*, 8 Iredell Eq. (N. C.) 9; *Troy v. Norment*, 2 Jones Eq. (N. C.) 318; *Burnley v. Cook*, 13 Texas, 586; *Yonge v. McCarmick*, 6 Florida, 368; *Coeur D'Alene &c. Co., v. Minors Union*, 51 Fed. Rep. 262; *Harrison v. Yerby*, 87 Ala. 185.

5. The equity of the bill does not at all depend, as insisted by counsel for appellee, on inadequcy of legal remedies, irreparable injury, insolvency of the tres-

passer, or necessity to avoid multiplicity of suits, &c., but rests on other and different considerations. However the bill may be tested, it is not without equity.

The principle for which we contend has often been recognized in our decisions, and is the inevitable offspring of provisions for the first time appearing in the organic law of 1875.—Constitution of 1875, section 7, Article XIV. This section of the Constitution, by its own unaided force, confers new rights upon property owners, and imposes new duties and additional restraints upon corporations, invested with the privilege of taking property, &c. It gives compensation, not only for the property taken, but also for consequential injuries resulting from the taking; and provides further, that neither the taking nor the injury shall occur unless compensation be first paid. It is clear that this provision of the Constitution contemplates there shall always be "preliminary assessment of damages," and payment thereof in advance, as conditions precedent to any lawful taking or injury. Without the doing of these things in advance, no matter how clear the right may otherwise be to condemn, or what the powers of the corporation, the taking or injury is unjustifiable and illegal; and will be restrained, without regard to the ordinary considerations upon which courts act in such cases; because it is the only way in which obedience to the Constitution can be compelled. Where complaint is made of corporate interference with the franchises of a public or *quasi* public corporation, the equity of the bill arises not only from the necessity of protecting the franchises against unlawful interference, but as well from the necessity of confining corporations within the limits of their charters and to prevent usurpation of their power to the injury of or in violation of the rights of the property owner.—*Mayor v. Rogers*, 10 Ala. 37; *Port of Mobile v. L. & N. R. R. Co.*, 84 Ala. 115; *W. U. T. Co. v. Judkins*, 75 Ala. 430; *E. & W. R. R. Co. v. E. T., V. & G. R. R. Co.*, 75 Ala. 275; *C. & W. R. R. Co. v. Witherow*, 82 Ala. 190.

A. A. WILEY and CHAS. WILKINSON, *contra.*—1. Complainants, in filing their bill of complaint in this cause, proceeded upon the idea that the City Council of Montgomery by ordinance had vacated, abandoned and dis-

continued the use of River street; that thereby title to the north half of said street reverted *eo instanti* to themselves as abutting land owners, and that they could by injunction proceeding obtain possession of and title to an undivided one-half interest in and to said streets, together with the improvements thereon, including the track laid along said street owned by defendant, under permission and authority of the City Council of Montgomery. In short, this injunction proceeding on the part of the complainants is in the nature of an action of ejectment to recover possession of an undivided one-half interest in and to River street, together with the improvements thereon, and to oust defendant therefrom, although in possession thereof under grant and authority of the City Council of Montgomery. It is plain, therefore, that injunction will not lie for the reason that, if complainants' contention be true, they have an adequate and complete remedy at law.—*A. & C. R. R. Co. v. J., G. & A. R. R. Co.*, 82 Ala. 297; *Boulo v. R. R. Co.*, 55 Ala. 480; *M. & G. R. R. Co. v. Ala. Midland R. R. Co.*, 87 Ala. 508.

2. The city has no authority under its charter to abandon River street.—2 Dillon Munic. Corp., § 675; 1 Wharton (Pa.) 569; *Mayor v. Morris C. & B. Co.*, 12 N. J. Eq. 557; Elliott on Roads, 667. The charter of Montgomery grants unto the city council the power "To establish, open, alter, widen, extend, grade, cut down, fill in, pave, or otherwise alter or improve all streets, avenues, side-walks, alleys or wharves, public grounds or squares."—Charter, page 14, City Code. "To authorize the use of the streets of said city for horses, *steam* or electric railroads, and regulate same."

Originally the courts were inclined to hold a distinction between a simple dedication—i. e. a street set off by the owner without a deed to the city—and a statutory dedication, so-called in some of the States, acquired by right of eminent domain, or express grant. But in each of these cases, if the sovereign power directly or through a municipal corporation, grant the right to construct a railroad track, and run trains *on or over such public street*, this is a *legitimate exercise*, of the police power, *inherent in the State*, and the changed use of the street ceases to be a public nuisance of which any one

can complain.—*Barney v. Keokuk City*, 94 U. S. 324; *Perry v. R. R. Co.*, 55 Ala. 425.

3. Courts of equity should not stop a great public improvement like a railroad, at the instance of a party whose damage is nominal, if at all. Complainants have not been deprived of one inch of land heretofore occupied by them; nor have they been deprived of the use of their property for railroad purposes.—*Schurmeier v. R. R. Co.*, 83 Amer. Dec. 770; *Zabriskie v. R. R. Co.*, 13 N. J. Eq. 314; *Baraem v. R. R. Co.*, 40 N. J. Eq. 557.

4. It is declared that where a railroad, under legislative and municipal grant, constructs a road on a street in a city, the fee to which is in the proprietors of the property abutting thereon, such railroad is not a trespasser, nor its railway an unlawful obstruction, nor a nuisance upon such street; and that an injunction will not lie in favor of such proprietor, to restrain the construction and operation thereof.—*Western Railway v. Ala. G. T. R. R. Co.*, 96 Ala. 272, approving *Perry v. R. R. Co.*, 55 Ala. 413.

5. When the facts show that an injunction might operate greatly to the prejudice of defendant, as well as the public, without corresponding advantage to the complainants, the parties will be left to their remedies at law and the writ should not issue.—*H. A. & B. R. R. Co. v. Bir. Un. R. Co.*, 93 Ala. 505; High on Injunctions, 598; *Western Railway v. Ala. G. T. Railway Co.*, 96 Ala. 272.

HARALSON, J.—The principles involved in this litigation have been the subject of repeated consideration and adjudication in this court. We may, for the purposes in hand, so far as is deemed necessary, summarize the result of these decisions—in harmony with decisions elsewhere, and with the text writers on the subject.

The rights of property in the public streets of a city, as has been held, are of two classes. The one, when there has been, by the owner of the land, a simple dedication of a part of the land as a street or public highway, without any conveyance of title, in which case neither the government, the municipality nor the public acquires any other interest than an easement, the ultimate fee remaining unaffected by the dedication; and the other, where dedication has been made and the fee

conveyed by the owner to the municipality. In *Perry v. N. O. M. & C. R. R. Co.*, 55 Ala. 424, referring to these two 'classes, the court said : "But, in each of these classes of cases, if the sovereign power grant the right to construct a railroad track and run trains on or over such public street, this is a legitimate exercise of the police power inherent in the State, and the changed use of the street ceases to be a public nuisance of which any one can complain. See an able discussion of this subject in *Barney v. City of Keokuk*, (4 Otto,) 94 U. S. 324. When, however, under the first named of the above classes, the ultimate fee remains in the land proprietor, the municipal government cannot confer on a railroad corporation, the right to convert a public street into a road-bed for its own use, unless the charter of such municipality or some other legislative authority, confer on it the power to do so."—*The State v. the Mayor*, 5 Port. 279. In the case referred to in 4 Otto, it was held that there is no substantial difference between these two classes of streets, —in which the legal title is in a private individual, and those in which it is in the public—as to the rights of the public therein.

Again it was said in *Perry's Case, supra* : "When a street (of the first class named) thus dedicated, is improperly obstructed, or perverted to a use other than for which it was dedicated, the owner of the fee has left in him sufficient title or right to prevent or redress the wrong ; and for this purpose the general rule is, that the owner of the attingent property is the owner of the ultimate fee, extending to the centre of the street. See *Cincinnati v. White*, 6 Peters, 431 ; Dillon on Munic. Corp. §§ 493, 495, 496, 500, 524." The complainant in *Perry's Case* was allowed to maintain the bill, on its averments, for the reason that no express provision was found in the charter of Mobile, authorizing the city authorities to grant, as they had done, to the railroad company, the right to lay its track on the streets of the city, a power which could not be exercised, unless conferred either expressly or impliedly by the legislature.—3 Elliott on Railroads, §§ 1076-1079.

In *Columbus & W. R. Co. v. Witherow*, 82 Ala. 190, the complainant sought to enjoin and restrain the defendant from the further construction of an embankment in one of the streets of the town of Leeds, on the ground that

the embankment would be a public nuisance, and would greatly injure and depreciate the value of two town lots owned by complainant, who was an adjacent owner, claiming a right to the center of the street. The bill alleged that the defendant had never paid or offered to pay complainant any compensation for the damages to her said property by the construction of said road, and there had never been any agreement between them fixing the compensation to be paid her therefor. A motion to dissolve the injunction that had been granted, for want of equity, and on the denials of the answer, was overruled. This court held that the bill on its face contained equity. "Taking these facts to be true, [as the court said], the authorities are numerous in support of the bill. Unless authorized by some law, in consonance with the provisions of the constitution, such use of the public streets of an incorporated town presumptively would be unauthorized by the original dedication, and would *prima facie* be a special damage to the complainant, which could be restrained by injunction at her instance, she being an adjacent property owner." In that case, the provision of section 7 of Article XIV of the constitution, prohibiting the taking of private property by municipal or other corporations, without making just compensation for the property taken, injured or destroyed,—such compensation to be paid before such taking, injury or destruction,— was duly considered. This court overruled the decree of the court below, and rendered a decree providing for a dissolution of the injunction upon the defendant furnishing security deemed adequate for the damage it might do in the erection of said embankment. The court said: "The proceeding is one in restraint of a public work of great utility—the construction of a railroad—thus presenting a case in which injunctions are granted with great caution. Delay in the construction of the work may operate very oppressively against the defendant, as well as result in great injury to the public. Courts very often, in such cases, balance the question of damages to the one party and that of benefit to the other, resulting from the maintenance of the injunction, on the one hand, and its dissolution, on the other, and refuse to take any action which will cause great injury to one party and probably be of serious detriment at the same time to the public without corresponding advantages to the other

party." Citing High on Injunc., (2d ed.), § 598; *E. & W. R. R. Co. v. E. T. V. & G. R. R.Co.*, 75 Ala. 275; *Torrey v. Camden & A. R. R. Co.*, 18 N. J. Eq. 293. The court added, that the case did not present the facts in such shape as to require them to act on that rule, thereby intimating that if the facts had so appeared there would have been no hesitation in its application, as was done in the 75 Ala. case cited. It is to be observed that though the facts stated in the bill gave it equity as was held, and authorized the relief sought, but were not sufficient for the absolute application of the rule just quoted in respect to the dissolution of injuctions in such cases, yet, out of abundant caution, lest a great railroad enterprise might be delayed in its construction, operating oppressively against the company, as well as in great injury to the public, the court in that case rendered a decree denying the relief as prayed for, and dissolving the injunction on terms of easy compliance by the defendant.

The case of the *Western Railway of Ala. v. Ala. Grand Trunk R. R. Co.*, 96 Ala. 272, is another case of the character of the one before us, in which the court, in the exercise of a sound discretion, balancing the relative inconvenience and injury likely to result from granting or withholding the writ, dissolved the injunction. The bill, as stated, made, *prima facie*, a clear case for injunctive relief. The appellee company had entered upon the land of the other company, without its consent and without making compensation therefor, when, as alleged, it was not necessary for said company to take complainant company's lands, which were necessary, as was averred, for the operation of its own road. It was further averred that irreparable damage to the complainant would result, unless the injunction should be granted. The lower court dissolved the temporary injunction, and this court, after elaborate consideration, affirmed the decree. This was done, on the ground, that it appeared the construction of defendant's railway would not interfere with the tracks of complainant, nor with any track it had the right to construct; that the damage to complainant would be nominal; that the defendant was not shown to be insolvent, and that to stop the work under the circumstances would probably result in grievous disaster to its enterprise, which was of a public nature,

without any advantages to accrue to the complainant. The bill, notwithstanding it presented a case where the court might grant the relief, was deemed not to be a proper one for injunction, but one in which the complainant should be left to the assertion of its legal rights in a court of law. Citing *H. A. & B. R. R. Co. v. B. U. R. Co.*, 93 Ala. 505 ; *Schurmeier v. St. P. &c. R. R. Co.*, 8 Minn. 113 ; *Zabriskie v. Jersey City R. Co.*, 13 N. J. Eq. 314 ; *Spencer v. Railroad*, 23 W. Va. 406 ; High on Inj., § 598.

That the remedy at law exists for the recovery of damages in cases where property has been taken without the owner's consent, and without having been duly acquired by condemnation proceedings, has received our consideration and approval in the recent case of *H. A. & B. R. R. Co. v. Matthews*, 99 Ala. 24, where it was properly held, that the owner might maintain an action at law for the redress of the wrong, notwithstanding the well recognized equitable remedies therefor.

In this bill, it is alleged that the Mobile & Montgomery Railway Company is the owner in fee simple of lots 1 and 2 in square 21 and square 22 Hanrick's Plat, which lots front and are adjacent to what has long been a street in the city of Montgomery, known as River street in all the maps and ordinances of said city ; that the Louisville & Nashville Railroad Company, as the lessee of the first named company, is now in the possession, and has been in possession of said lots for more than ten years past, using them as a part of its station and depot grounds in said city ; that said street was dedicated to the public as a street by the owner of the original tract, by sellings lots bordering on said street, and by laying out the same on the maps as a street, and said dedication was accepted by the city, and for more than fifty years said street has been recognized and maintained as a public street by the corporate authorities thereof ; that the title thereto has never been conveyed to or held by the city, and the fee to the centre of said street resides in the complainant,—the Mobile & Montgomery Railway Company,—so far as the said street touches the real estate aforesaid, subject to the easement of the public therein as a street; that, adjacent to the above described property, there has been laid out as a sidewalk and used for such purposes for fifty years, a

space of about ten feet, which space lies between the street and complainant's above described property; that on the 13th day of January, 1897, the city council of Montgomery, by ordinance, abolished and discontinued River street as a public street in said city,—which ordinance is exhibited as a part of the bill,—by which the city purports to grant to the defendant, the Alabama Midland Railway Company, the right to lay, maintain and operate railroads, switches, turnouts, and to stand cars on said River street, and to change the grade thereof. It is further alleged, on the advice of counsel, while the said city may have had authority to discontinue River street as a public street, thus, discharging the city from all further obligation or duty to maintain or keep the same in repair as a street, that when said street was abolished, the land which had been occupied as a street, remained subject to the original dedication, so far as the owners of the adjacent property were concerned, as a thoroughfare or means of communication to and from their property, and that the control and use of the same to the centre of said street, by operation of law, reverted to the adjacent property owners on either side thereof; that the corporate authorities were without authority to grant rights to any one to occupy said street; that the only right by which any one could use any part of said street for any purpose, without the consent of the owner, would be to take the same upon *ad quod damnum* proceedings, and upon first making full compensation for all damages resulting from the taking, injury or destruction of the rights of the adjacent proprietors in and to the discontinued street, as provided by the constitution and laws of Alabama; that the defendant company, on the night of the 20th of January, 1897, by force and arms, without the consent of either of complainants, trespassed upon the said sidewalk above described, adjacent to the said property of complainants, and cut down valuable shade trees thereon, and has laid down a railroad on the entire sidewalk adjacent to complainants' said land, for the purpose of connecting that track with other of its tracks in said city; and it is charged, that defendant intends to change the grade of said River street, to its centre, and to use that space and said sidewalk for tracks, and the running of trains thereon, and intends to appropriate all of the

space adjacent to complainants' property to the centre of the street and devote it to railroad uses, etc.; and thereby damage not only complainants' property on account of the nearness of said tracks, and the operation of trains thereon and the changing of the grade, but destroy complainants' right of ingress and egress over the street adjacent to complainants' property. It is not averred that the defendant corporation is insolvent.

The ordinance of the city exhibited to the bill, is entitled, "An ordinance to grant the use, occupancy and enjoyment of certain parts of River and Goldthwaite streets in the city of Montgomery, to the Alabama Midland Railway Company, its successors and assigns, in consideration of the grant and dedication by the Alabama Midland Railway Company of a street sixty feet wide, extending from Clay street to Martha street through the lands of the Alabama Midland Railway Company," etc.

The preamble of the ordinance sets out the agreement of said company to lay out and dedicate said sixty feet street to the city, in consideration of which the city was "to relinquish to the Alabama Midland Railway Company the use, control and occupancy of certain parts of certain streets,"—including River Street,—the declared purpose of which was, "to enable the said Alabama Midland Railway Company to have better terminal and transportation facilities in said city of Montgomery, and for the good and convenience of the general public." In consideration of the premises, the ordinance declares, "that all that part of River street now extending west of Moulton street * * * shall forthwith, upon the adoption of this ordinance, be discontinued and abolished" as a public street; that said railway company, "its successors and assigns, may reduce the grade of said abandoned streets to any extent that it may deem best; may lay down, maintain and operate railway tracks thereon, with necessary switches and turnouts, and stand cars upon the same," etc.

The defendant demurred to and answered the bill. It admits in its answer the ownership as alleged of said property, and the existence of River street for over twenty years past. It also "admits existence of River street for over twenty years, and user of same for street purposes; but denies that title thereto was never conveyed to the city

of Montgomery; does not admit that complainants, or either of them, have any such right, title, claim, or interest therein or thereto, as would entitle them, or either of them, to one-half of said street, even if the same should ever be abandoned by said city, as a street, in any manner whatsoever; admits the existence of the sidewalk for a number of years, as stated, but avers that it was seldom used and has long since ceased to be used as a sidewalk; that no one lives on said River street; and that there is no office, work-shop, or other building on the north side of said street; that defendant laid its track in such manner as to avoid obstructing River street; that the land of complainants abutting said street is so far below the surface of said street as to be dangerous to the travelling public, if left unprotected and unbarricaded on said north side; that complainants have removed the house, formerly used as their railway offices, and cut down the ground, so that if defendant should not grade or otherwise improve that portion of said street, great injury would probably result to the public; and defendant avers that by laying its said track along the abandoned sidewalk, on the north side of said street and near to said cut, it is protecting the general public by providing something like a barricade against falling over said embankment down into said cut; that the greater portion of said River street is from twenty to forty feet higher than the level on which complainants' railroad tracks, extending along the ground abutting said street, are situated; that defendant also avers that it owns all the land on the south side of said street and has its offices there; and has used said street in large measure in reaching said offices, and other property belonging to defendant, and continues to so use the same; but complainants do not use said street for any purpose; that complainants are now excavating near the north side of River street in such manner that it would require a ladder to climb from complainants' tracks in order to reach River street; that said part of River street leads or runs west toward the railroad cut under Bell street bridge, but terminates at Whitman street; that ample and abundant space is left on said street for general travel and for the entrance and exit of every one desiring to walk, ride, drive, or in any manner to travel thereon; and defendant avers that it is impossible for complain-

ants to use any part of said street in connection with their lands unless they cut down the street from twenty to forty feet, as aforesaid. A map of said street is attached and marked 'Exhibit Y,' and prayed to be taken as part of this answer. And defendant avers that defendant has not cut down the grade, or in any manner interfered with the free use of River street."

"For answer further, defendant says that the true intent and meaning of said ordinance is, that the city council, recognizing the great importance of the contemplated improvement, increased facilities for trade and travel, the commercial aid to the city, as well as the interests of defendant, and also in consideration of the dedication of valuable realty as a public street known as Clisby Avenue, and for other valuable considerations by defendant, did grant unto defendant the right to lay its track, and run its cars on and over River street, and to improve the same for the purpose above stated; and this was done in strict compliance with said grant to defendant by the said city council of Montgomery, by means of an ordinance adopted in compliance with legislative authority, granted unto said city of Montgomery and the said city council, as will more fully appear from section 7, page 14 of charter of Montgomery, as contained in the City Code of Montgomery, to-wit:

" 'A.' Section 7. 'To establish, open, alter, widen, extend, grade, cut down, fill in, pave or alter, or improve any street, avenue sidewalk, public park, grounds, etc.'

" 'B.' Section 15, page 19, 'power to authorize the use of streets of said city (by) horse, *steam*, or electric railroad and to regulate the same;' and by virtue of the authority therein conferred defendant did erect a single track on said portion of said street and run its cars thereon until complainants obtained a writ of injunction from this honorable court restraining the use and operation thereof."

The charter, in its 16th section, further confers on the city the power "generally to control and regulate the use of the streets for any and all purposes."

The answer further sets up that in so far as the city authorized the use of said street by defendant, the license was under legislative authority duly and wisely exercised; "that defendant is not occupying one inch

of ground ever occupied by complainants, or either of them; that defendant is not occupying one inch of ground that could be occupied by complainants, or either of them, if defendant immediately moved its track, or in any wise or manner renounced or relinquished any right or privilege to use said street," which it acquired under said ordinance. It is further shown that the Mobile & Ohio Railroad Company, operating six hundred and eighty-five miles of road, is now building a road from Columbus, Miss., to Montgomery, Ala., involving an expenditure of many millions of dollars, which railroad company will reach the city of Montgomery over the terminals of the defendant company, provided for in said ordinance.

It seems to be well settled that the Legislature has the power, generally, to vacate a street in a city, and may delegate this power to the municipal authorities.—Elliott on Roads & Streets, 661, 663, and authorities cited. Whatever may be said of said city ordinance, as to whether it exceeded in part the powers conferred on it by the Legislature or not, we apprehend it was, so far as appears, a valid license by the city, and to that extent within its grant of powers, for the defendant to occupy the portion of said street on which it is alleged it laid its track.—*Peters v. N. O. M. & C. R. Co.*, 56 Ala. 537; *Perry v. N. O. M. & C. R. Co.*, 55 Ala. *supra*. All such licenses, however, must be granted, subject to the rights of abutting proprietors, under the constitution and laws of the State, who may have acquired rights by the terms of the dedication under which the street was set apart, and may sustain special injury thereby.—*Avondale v. McFarland*, 101 Ala. 381.

From all this it appears that the complainants are seeking in this suit to prevent the defendant from doing what they themselves could not do, except under a license from the city, to which they would be no more entitled than defendant. The sidewalk on which defendant's road is placed is high up on a bluff away from complainants' lines and business, incapable of use by them, so far as appears, unless dug away to the level of their lines below, which would more effectually destroy said sidewalk, than its occupancy by defendant tends to destroy or injure it. Nor could complainants occupy any portion of said street to its center without impairing

[Mobile & Montgomery R'y Co. v. Alabama Midland R'y Co.]

public conveniences as much or more than defendant's occupancy does. That the running of a line along said street for terminal facilities and connections by the defendant company and the Mobile & Ohio Railroad Company are most important to the respective companies and of very great moment to the public welfare, seems to be clearly manifest. If the complainants suffer any damage in consequence it has not been made to appear to be large, and taking as true the responsive averments of the answer, it does appear it would be inconsiderable as compared with the loss that would be entailed by the perpetuation of the injunction; and, so far as appears, defendant is able to respond in damages for any injury it may have caused the complainants. Its perpetuation would probably result in grievous disaster to defendant and the other company without any apparent advantage to accrue to complainants.

This is the case as made by the answer, and referring only to such parts of it as may be properly deemed responsive, it is one of those cases in which a court of equity, in the exercise of a sound judicial discretion, refuses to interfere by injunction, leaving the parties to legal remedies.—*Wharton v. Hannon*, 115 Ala. 518. But the bill is not without equity, and on a final hearing the denials of the answer may not be supported by the evidence. Nor is the bill incapable of amendment, presenting a case, if facts exist, which would require injunctive relief. The city court properly decreed a dissolution of the injunction, but was in error in sustaining the motion to dismiss the bill for want of equity.

The result is the decree must be reversed, and a decree rendered overruling the motion to dismiss the bill for want of equity, and dissolving the injunction, each party paying one-half the costs of appeal, and the cause is remanded.

Reversed, rendered and remanded.